SAM SHAPIRO, RESPONDENT, v. CHILDS COMPANY, APPELLANT.*

Kansas City Court of Appeals. March 4, 1929.

*Corpus Juris-Cyc. References: Evidence, 22CJ, section 1674, p. 1257, n. 71; section 1713, p. 1282, n. 86; Novation, 46CJ, section 47, p. 603, n. 99.

*Trusty & Pugh* for respondent.

*Ringolsky, Friedman, Boatwright & Jacobs* for appellant.

LEE, C.—This is an action by lessee for a $3500 bonus claimed to be due from lessor under the terms of the lease, because of a termination thereof prior to the agreed maturity date. From a judgment in favor of plaintiff lessee, defendant lessor appeals.

Appellant Childs Company, a New York corporation (herein for convenience referred to as defendant), was holder of a long-time lease on the five-story building at 1117-1119 Walnut street, Kansas City, Missouri, and on May 23, 1922, subleased the second floor of the building to plaintiff for a Ladies Ready-to-Wear Clothing Store for a term ending July 31, 1930, at a gradually increasing monthly rental. The lease provided that the lessor might terminate same at any time before maturity if it should dispose of its own leasehold of the whole property, or should make a bona-fide lease for the entire building to one tenant; but this right was conditioned upon giving plaintiff six months' written notice, and upon the further condition of paying to plaintiff the sum of $3500 ''when the premises are re-delivered under this paragraph.''

In March, 1924, defendant assigned its leasehold in the whole building to the Columbia Realty Company, and served on plaintiff a written notice, which recited the fact of the plaintiff's lease, and continued:

''You Are Hereby Notified, that the undersigned do hereby terminate and cancel the said lease on October 1, 1924. The amount specified to be paid to you in the event of said termination, viz.: $3500, will be paid to you on said date in cash.''

The notice then recited that it had disposed of its leasehold estate in the property, and that it was to give possession on March 31, 1924.

The Columbia Realty Company took possession of the property accordingly (subject to plaintiff's right to six months' possession of the second floor). At the same time, by agreement with the Childs

Company, it placed $3500 in escrow in the Commerce Trust Company, with which to meet the bonus payment to plaintiff on October 1st. Thereafter the Childs Company appears to have had no further connection with the affair until just before the present suit was brought.

On May 9, 1924, the Columbia Realty Company, the new owner of the leasehold, as first party, entered into a written agreement with plaintiff Shapiro, as second party, which recited the existence of the lease, that first party desired to make certain improvements, betterments and alterations in the building, and that second party desired to permit same; and that "in consideration of the mutual benefits each to the other accruing by virtue of the provisions hereof, and of one dollar each to the other in hand paid" it was agreed as thereinafter set forth. Then followed a description of the proposed alterations according to identified architects plans, which included the installation of a sprinkler system (and as part of the plans, the installation of a new, modern plate-glass window front on plaintiff's second floor).

It further provided for the non-liability of first party for damages accruing to second party (plaintiff) in the work, and for the maintenance of a watchman when needed; for the use of second party's floor space as found necessary (for which second party would remove his property from such space as was desired), for the temporary suspension of elevator service as might be necessary, and that there should be no abatement or diminution of rent payable by plaintiff during the period.

It concluded with the following:

"(6) This agreement does not constitute any modification, change, alteration, diminution or enlargement of the said lease executed by second party, and Childs Company and assigned to first party, covering said second floor of said premises, but said lease shall be and remain in full force and effect as to all of its provisions and agreements, except that the provision on page 2 of said lease as to termination under certain conditions is hereby cancelled and struck out of said lease."

Plaintiff testified that in the negotiations toward the foregoing contract it was stated to him by Mr. Rieger, of the Columbia Realty Company, that "I (plaintiff) was going to get $3500 from Childs Company, and that I would get the space for the same rent under a new lease." Mr. Rieger denied remembrance of such a conversation.

Pursuant to this contract, the Columbia Realty Company proceeded to make the said improvements. At the trial plaintiff testified that he moved out in July to quarters on Broadway, where he conducted a wholesale business, and did not move in again until October 2nd,

under his new arrangement with the Columbia Realty Company, having just installed new fixtures in the premises at a cost of $5000 for a retail business; and that he paid full contract rental for the intervening period. Defendant introduced evidence tending to show that plaintiff did not move out at all, and that he continued to transact business there all summer, and had in fact never at any time delivered up the property pursuant to the notice. At the close of the trial the court by instruction withdrew from the jury the issue of whether or not plaintiff vacated and moved out of the premises prior to October 2nd. There was no dispute as to the fact that Shapiro remained in possession after October 2nd under the same rentals as were provided in the old lease.

Plaintiff continued his retail store in the premises for some months, and then discontinued same there; and the place remained vacant for about six months, during which he continued to pay rent to Columbia Realty Company. On December 24, 1925, plaintiff subleased the premises to Pattison-McGrath Company for a term ending July 30, 1930 (the same maturity as the old), at the same monthly rental as was being then paid by plaintiff. In addition, the Pattison-McGrath Company agreed to pay plaintiff a bonus of $1500, in installments, and further agreed "to carry out all covenants and agreements of the original lease between the Childs Company, a New York corporation, lessor, and Sam Shapiro, the lessee." Pattison-McGrath were also given the use of certain fixtures and a partition.

Plaintiff testified that when he asked permission of the Columbia Realty Company to make this sub-lease that company "wouldn't give it to me unless I would release them from the $3500." However, having decided to their own satisfaction that permission from the Columbia Realty Company to make a sub-lease was not required, the parties proceeded to make it.

Plaintiff testified, also, that when he discontinued his retail business some six months prior to the Pattison-McGrath transaction, he had talked to Mr. Rieger, of the Columbia Realty Company, about then giving up his lease, and that Mr. Rieger "said he would release me of the lease if I would give up the $3500," which plaintiff refused to do.

Mr. Rieger testified that he did not make demand on the Commerce Trust Company for a return of the $3500 until October 1, 1924, and apparently did not then get it, if at all. It was still on deposit on December 12, 1924, when the bank wrote plaintiff that they understood the lease had not been canceled and asked authority to return the deposit to the Columbia Realty Company. On December 30, 1924, defendant Childs Company wrote plaintiff from New York, as follows:

"We regret very much that there has been any question as to the payment of the sum of $3500 by reason of notice served upon you to vacate the second floor of the above-captioned premises.

"As you know, when we disposed of this property to the Columbia Realty Co. it was part of our bargain of sale that they supply the money with which to cancel your lease and take title, subject to your lease, we having served the cancellation notice.

"We do not know here just why the Columbia Realty Co. do not wish to pay you the money, but understand indirectly it is because you have not vacated the premises under the terms of the notice. If you could send us your side of the story, we will endeavor to obtain from the Columbia Realty Co. its version of the affair and see if we cannot straighten this matter out.

"We, of course, have no interest in the matter at all except as the former lessees of the property and have so notified the Commerce Trust Co., but we feel if the money is to be paid out on our order that we should have the authorization of both the Columbia Realty Co. and yourself, instructing us to request the Commerce Trust Co. to pay over the money under its escrow agreement."

It is to be noted that defendant Childs Company did not then claim to have been party to any change in its contract rights and obligations. The present action was filed on January 16, 1925, at first against the Childs Company, the Commerce Trust Company and the Columbia Realty Company, but it was later dismissed as to the latter two defendants.

At the trial the defendant was permitted to introduce, over plaintiff's objection, the above-mentioned contract of May 9, 1924, between the Columbia Realty Company and plaintiff; and thereafter, over defendant's objection, the plaintiff testified as to his conversations with Mr. Rieger to the effect that the contract should not affect plaintiff's right to the $3500. The court gave, among others, the following instructions, the giving of which is here alleged by defendant to have been error:

## "P-2.

"You are instructed to render a verdict for the plaintiff for the sum of $3500 and interest at six per cent from March 24, 1924, if you find from the evidence that when the plaintiff and the Columbia Realty Company entered into the written contract of May 9, 1924, it was expressly understood by the plaintiff and said Columbia Realty Company that such written contract did not destroy the plaintiff's right to recover said $3500."

## "C-1.

"The court instructs the jury that in order for the plaintiff to recover in this case the jury must believe from the evidence that at the

time the written contract of May 9, 1924, between the Columbia Realty Company and the plaintiff, was made, it was expressly stated and understood by plaintiff and the Columbia Realty Company that said contract did not affect plaintiff's right to recover the $3500 sued for in this case, and it devolves upon plaintiff to prove by the preponderance or greater weight of the credible testimony in this case that at the time of the execution of said written contract it was so expressly stated and understood by plaintiff and the Columbia Realty Company.''

Appellant assigns as error the court's refusal to give defendant's peremptory instruction in the nature of a demurrer at the close of the trial, on the ground that the evidence showed that there had been no termination of the lease, and hence there was no right in plaintiff to the bonus sued for.

Upon service of the notice by defendant on plaintiff in March, 1924, in strict accordance with the privilege given in the lease, the rights of the parties became fixed. Defendant at once became entitled to possession on October 1st, and plaintiff became entitled, on said date, to the payment of $3500. The termination of the lease was not contingent upon either re-delivery of the premises or payment of the bonus at that date. The notice itself established the termination. If lessee remained over he became subject to eviction, and if lessor failed to pay the agreed bonus he was liable in an action therefor. This seems to be the general holding of the courts in such cases.

In Miller v. Levy, 44 N. Y. 489, the court said:

''A provision in a lease that the lessor may 'terminate the lease at the end of any year, by giving sixty days' previous notice, in case he should sell or desire to rebuild,' is not a condition, but a limitation, and the term expires by force of a sale and notice, in sixty days thereafter, without any further act on the part of the lessor.''

In 16 R. C. L., p. 1112, it is stated:

''A party exercising an option to terminate a lease renders himself liable for the payment of any compensation which may be provided for. And where a lessor has by due notice exercised his privilege to terminate the lease, which provides that on the exercise of such privilege he shall pay a certain bonus to the lessee, it has been held that the lessee becomes absolutely entitled to the payment of the specified bonus, on the lessor's exercise of such privilege, and the lessor cannot by any attempted revocation, even before the time has expired for the lessee to quit the possession, relieve himself from liability.''

To the same effect see Annotated Cases, 1916B, p. 308; and Wisner v. Richards (Wash.), 113 Pac. 1090, quoting Wood on Landlord & Tenant (2 Ed.), par. 44, as follows:

"When a valid notice to quit is given by landlord or tenant, the party to whom it is given is entitled to count upon it, and it cannot be withdrawn without the consent of both parties. [24 Cyc. 1334; Western Union Tel. Co. v. Pa. R. Co. (C. C.), 120 Fed. 362, 385; In re Magee & Smith, 10 Manitoba, p. 1.]"

Since the lessee recognized the notice and termination of the lease thereunder, by making a new contract with his new landlord, we are not here concerned with what would or might have been the rights of the parties had the lessee held over in defiance of the notice.

Defendant asserts that such mutual assent was had in the agreement of May 9, 1924, between plaintiff and Columbia Realty Company, the new landlord. Plaintiff's original lease was from the Childs Company. When that company served its notice in March, 1924, it was still the landlord, and the respective rights and obligations between it and its lessee were then determined and fixed. Childs Company became liable to Shapiro for $3500 on October 1st, payable upon redelivery of the premises, which it might then enforce. Shapiro lost his right to possession after October 1st, up to which time he was liable for rent. Upon taking over the leasehold on March 31st, the Columbia Realty Company succeeded to the Childs Company's rights therein as they then were, subject to Shapiro's right of possession for six months longer; but that fact and any mutual agreements made by the Childs Company and the Columbia Realty Company as to their ultimate liability to the payment between themselves, to which Shapiro was not a party, did not constitute a novation whereby Shapiro's claims against Childs Company were transferred to Columbia Realty Company.

The contract of May 9th, therefore, was a new agreement between new parties, and its effect must rest upon what is expressed or omitted under its terms. The evidence shows that the Columbia Realty Company, the new holder of the main leasehold on the whole building, was anxious to begin immediately on some proposed improvements to make the building more modern and attractive for new tenants. To do this it was necessary to get the consent of those tenants, including plaintiff, who had leases. The terms of the agreement and the evidence as to the actual disturbing effect of the work disclose a real consideration on plaintiff's part in permitting same prior to the termination of his lease, and while he was still obligated for rent. In the negotiations the question of plaintiff remaining in the premises was under consideration, and clause (6), quoted above, was inserted, over the effect of which the present controversy arises.

Defendant contends that this agreement re-instated the old lease; that therefore there was no termination on October 1st, and hence that there was no basis for a demand for the $3500 bonus. The agreement, as to the provisions for repairs before October 1st, was a

recognition of rights remaining in plaintiff under the old lease. But the provisions for remaining over after October 1st were in effect a new lease. In Western Union Tel. Co. v. Railroad, 120 Fed. 362, l. c. 384, the court said:

"A valid notice terminating a lease given by a landlord or tenant cannot be withdrawn except by consent of both parties which amounts to a new agreement and creates a new tenancy."

In 35 C. J., p. 1038, sec. 180, it is stated:

"The taking of a new lease will not defeat a cause of action already accrued under the old lease."

Plaintiff testified that in the negotiations preceding the contract of May 9th Mr. Rieger, for the Columbia Realty Company, repeatedly cited the fact that plaintiff would get $3500 as a reason why he ought to be satisfied to move out prior to October 1st; that the clause eliminating the right to terminate was inserted at plaintiff's request to protect him from loss in his fixtures (which he said cost him $5000) by being compelled to move; that he regarded and understood the contract as "a new lease." When asked why he did not insist upon the payment of $3500 in that written agreement, he answered: "That $3500 was a Childs Company proposition." He further testified that he asked Mr. Rieger if the agreement would affect his $3500, and he was answered that "it wouldn't affect it at all."

On the other hand, Mr. Nathan Rieger (as did also his father) denied any conversations as to the $3500. On his cross-examination the following colloquy was had:

"Q. When this agreement was made you knew that you had $3500 to pay Mr. Shapiro? A. I knew it was in there.

"Q. And you knew the purpose for which it was there? A. Yes, sir.

"Q. You say you had in mind when he signed this agreement that your company would get the money? A. We were to keep it.

"Q. Did you go to the Commerce Trust Company to get this money? A. Yes, on October 1st.

"Q. But you didn't go from the time this agreement was signed until October 1st? A. That is correct.

. . . . . . . .

"Q. And when Sam Shapiro was signing this agreement you had in your mind that that destroyed his right to this $3500? A. Yes, sir.

"Q. But you didn't mention it to him? A. No, I didn't mention it to him.

"Q. You didn't tell your attorney to mention it to him? A. No, sir. It was natural to suppose that the condition of the lease would be to the same force and effect as before."

The giving up of plaintiff's present right to undisturbed possession, and of his right to vacate entirely and terminate his liability for rental on October 1st, on the one hand, and the securing by the Columbia Realty Company of the right to begin remodeling immediately and of a contract obligation by Shapiro to continue as tenant under the old rentals till 1930, on the other hand, were live questions between them, the settlement of which constituted ample consideration between them. Their contract created a new tenancy, on the same terms as the old except as then amended, based on these mutual existing rights and obligations, which did not of themselves include accrued rights of plaintiff against a third party; and the reference to the old lease could only be for the purpose of fixing the terms of the new tenancy *in futuro*. There was no consideration expressed or implied for the release of defendant from its accrued obligations, which as between the parties to the new contract was an outside matter not necessary to a determination of their mutual status as lessor and lessee. Defendant offered the contract in evidence, and the court admitted it tentatively over the objection of plaintiff. Instead of standing on its objection, and asking an instruction withdrawing the contract from the jury, plaintiff thereupon elected to introduce evidence rebutting any unfavorable inference which might be drawn from the language of the contract, by oral testimony as to the express verbal statements of the parties made at the time that the matter of the $3500 was not to be affected. Defendant offered testimony denying such statements. The oral testimony introduced did not vary, alter or contradict the terms of the written contract, which related only to the affairs of the parties thereto, and made no reference to the satisfaction or otherwise of a third party's obligations.

The petition pleaded the original lease, notice of termination, and indebtedness of defendant thereunder. The answer admitted the lease and the notice, but pleaded in avoidance of the indebtedness that "*plaintiff and defendant* entered into an agreement whereby the notice of cancellation was withdrawn." The contract of May 9th was not one to which defendant was a party, or even named, nor its rights referred to, and it was not relevant under the pleadings. It could only be relevant on the theory that it was intended for the benefit of a third party, which was not pleaded; but having been introduced by defendant with the claim that it affected plaintiff's rights as to a third party, on a matter not expressly mentioned therein, the court did not err as against defendant in admitting oral testimony to explain the intent of the parties as expressed at the time, bearing on the alleged consideration, nor in giving Instructions P-2 and C-1, submitting the question to the jury.

There was no evidence on either side that the staying in possession by plaintiff after October 1st was other than by virtue of the contract with the new lessor, who alone had the right to object. The recognition of the new relation, and consent thereto by the new lessor, was in effect a surrender by lessee of his possession of the premises under the old lease. We hold that there was no error in refusing defendant's instructions submitting the question of re-delivery.

Under the terms of the original lease the bonus of $3500 was due at the date specified in the notice for the termination of the lease, in this case October 1, 1924. The court instructed the jury, if it found for plaintiff, to include interest from March 24, 1924, which was the date of the notice. This was error. Plaintiff was only entitled to interest from October 1, 1924; and the verdict and judgment as to the amount of interest allowed for the time prior to October 1, 1924, amounting to $109.08, was erroneous and not due plaintiff, which leaves $4172 as the balance due at the time of the verdict, instead of $4281.08, as found by the jury.

We find there was no error in the trial except on the matter of interest due, as stated. If within ten days from the date hereof plaintiff shall enter *remittitur* in the sum of $109.08, then the judgment shall stand affirmed in the sum of $4172. If such *remittitur* shall not be so entered, within ten days, then the judgment shall stand reversed and the cause remanded. *Barnett, C.,* concurs.

PER CURIAM:—The foregoing opinion by Lee, C., is approved and adopted as the opinion of the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.