In re Marriage of Nelda Joyce
ANDREWS, Respondent,

v.

James Edwin ANDREWS, Appellant.

No. WD 34677.

Missouri Court of Appeals,
Western District.

June 26, 1984.

Vance C. Preman, Kansas City, for appellant.

Ronald R. Holliday, Savannah, for respondent.

Before CLARK, P.J., and SHANGLER and NUGENT, JJ.

CLARK, Presiding Judge.

In this appeal from the decree in a dissolution of marriage case, the husband complains as to provisions for the sale of marital assets and division of the proceeds and as to the order charging him with payment of a portion of the wife's attorney fees. The contentions are without merit and the judgment is affirmed.

The attenuated nature of appellant's points on appeal coupled with the presentation by respondent of a motion for damages for a frivolous appeal require a recitation in detail of the proceedings below.

This action for dissolution of marriage was commenced by respondent-wife on August 5, 1982 soon after she and the minor child had left the family's farm residence. Temporary allowances for support of the wife and child were sought and by order entered September 29, 1982, appellant was directed to pay $400.00 monthly as maintenance and $30.00 per week child support. The first payment of $430.00 under this order was made, but respondent refused thereafter to make any further payments.

On November 12, 1982, respondent moved to cite appellant for contempt. An order to show cause was issued and the parties appeared November 24, 1982. According to the wife's allegations, the primary marital asset and the source of the parties' income was a dairy farm created and operated through joint effort prior to the separation. After the separation, which left appellant in possession of the farm, appellant not only had refused to make the court ordered support payments to the wife, but he had also neglected the dairy operation. The business required daily attention and, according to the wife's motion, appellant's abandonment of the farm operation created the possibility of substantial loss in the value of the property. The wife sought the court's intervention to preserve the farm as a productive marital asset and also to enforce compliance by appellant with the order for support payments.

In a conference discussion among the parties and the court on November 24, 1982, an agreement was reached on the issues raised by the wife's motion. That agreement was recited in an order entered by the court November 30, 1982. The order provided that appellant would resume daily work at the farm, the proceeds of a milk payment check of December 1, 1982 would be paid over to respondent to cover past support arrearages and future maintenance would be reduced to $200.00 a month. The order further recited the parties' agreement that a public auction sale of the farm and equipment would be held within thirty days and all proceeds would be deposited with the circuit clerk.

Contrary to the agreement of November 24 and the court's order, appellant did not resume work at the farm, but instead, he abandoned the property and left the area for an undisclosed destination. Payment on the support obligation was not made and there was immediate prospect for waste and deterioration of the dairy business and its value. Respondent therefore moved on December 3, 1982 for an order placing her in possession of the farm, excluding appellant therefrom and for an order holding appellant in contempt of the prior court

orders of September 29 and November 30, 1982.

An order for appellant to show cause why he should not be held in contempt of court for his failure to abide by the agreed order entered after the November 24, 1982 hearing was issued and served on appellant December 15, 1982. The record here, however, does not show any action taken on that order. The issues as to the other relief sought by respondent in her motion were taken up and on December 6, 1982, the court ordered respondent placed in possession of the farm. Appellant was ordered excluded from the property and was restrained from interfering with respondent's operation of the dairy. That order was also served on appellant December 15, 1982.

The dissolution of marriage case came on for trial December 17, 1982. Disputed issues were the extent and division of marital property and appellant's obligation to pay maintenance. In particular, the court received evidence as to the value of the farm and equipment through statements by appellant and respondent and by an appraisal made by a bank officer. As a consequence of this evidence, the court set a reserve price on the auction sale, but otherwise entered no modification of the previous agreement, embodied in the November 30, 1982 order, which provided for the parties to arrange a sale of the property and deposit the sale proceeds with the circuit clerk.

At the December 17, 1982 hearing, appellant confirmed to the court statements he had made of his intention to disrupt the sale and otherwise to be uncooperative. The court ordered appellant not to attend the sale in person. The court also issued a partial decree which dissolved the marriage, awarded custody of the child to respondent and ordered appellant to pay maintenance and support. The cause was continued to January 17, 1983 for final orders dividing the marital property.

A public auction sale of the farm and equipment was held January 11, 1983. Gross sale proceeds of $194,000.00 were obtained, the amounts being in excess of the values expressed in the testimony at trial in December. At the continued hearing January 17, 1983 a report of the sale was made to the court. As to the sale of the real estate, deposits were made when the bids were taken with the balance due at closing on delivery of deeds. Those deeds were executed by the parties at the January 17, 1983 hearing and they were delivered February 4, 1983 when the balances of the purchase prices were paid. Appellant expressed no objection to the sale price or to execution of the deeds. The cause as to division of the marital property was continued from the January 17, 1983 hearing to await the real estate closings and a final sale report.

The final report showing receipts and expenses of the auction sale and the balance held by the clerk of the court was made February 10, 1983 and on February 11, 1983, the court entered the order which is the subject of this appeal. Various marital assets distributed in kind are not the cause of dispute. In general, appellant complains of the division and distribution of the auction sale proceeds. The court's order as to that subject provided for payment of a real estate mortgage, taxes and expenses of the sale. Certain debts of the parties incurred during the marriage were also paid and provision was made for satisfaction of attorney fees. The balance was divided between the parties in the approximate ratio of 40% to appellant and 60% to respondent.

It is also necessary and appropriate to describe at this point the disposition of contempt charges against appellant.[1] Although the citation issued December 3, 1982 for appellant's violation of the November, 1982 order did not mature in any hearing, another order to show cause issued January 13, 1983 for a violation of the

---

1. The account of contempt proceedings against appellant and his prior conduct with respect to orders issued by the trial court is included in this opinion for the relevance of those circumstances to respondent's motion for damages for appellant's frivolous appeal.

December 6, 1982 injunction. That issue was taken up January 17, 1983. The evidence presented showed that on January 3, 1983, in violation of the court's order enjoining appellant from interfering with respondent's operation of the dairy, appellant intercepted at the post office and converted to his own use a check mailed to respondent in payment for milk she had sold and delivered. On a finding that appellant had knowingly and intentionally violated the court's injunction, appellant was adjudged guilty of contempt and he was sentenced to serve thirty days in the county jail. The sentence was executed.

On this appeal, appellant first complains about the public sale of the parties' marital assets contending that the conditions of sale were unfair, that the price realized at the sale was so grossly inadequate as to shock the conscience and that he was "cheated out of" money to which he was entitled when the inadequate sale proceeds were divided. He also mounts a superficial charge that respondent received a disproportionate share of the assets and he complains that he was required to share in paying . an excessive fee to respondent's attorney.

The principal thrust of appellant's contention is that the trial court erred in failing to set aside the "judicial sale." He asserts in his brief that the court should have so acted because the value of marital assets sold was $300,000.00, a figure at least $100,000.00 in excess of the bid price, and that he was prepared to offer at least a bid of $100,000.00 more than the eventual sale price, but was prevented from doing so by the order of the court barring his attendance at the sale.

These averments are sheer sophistry. There is not a scintilla of evidence in the record to support a claim that the marital property had a value of $300,000.00 or an amount even approaching that figure. All of the value evidence was to the effect that the sale price was unusually fortuitous. Indeed, appellant himself testified earlier to his opinion of the value of the farm acreage and improvements, and the price

he set was significantly below that bid at the sale. Appellant's assertion that his own bid of $300,000.00 for the property was precluded by the order of the court denying him the opportunity to attend the sale is also manufactured from whole cloth solely to embellish this appeal. The record is devoid of any evidence that appellant had either the capacity or interest to bid any amount for the property, aside from such equity as his own distributive share provided. The order excluding appellant from personal attendance at the sale was prompted by his own statements of intention to interfere with and stop the sale if possible and was necessary to insure orderly proceedings. There was no hindrance by the order, however, for attendance by appellant's attorney or agent who would have been able to offer a bid on appellant's behalf. In addition, the personal interests of the parties were protected by the reserve price set in accordance with the value evidence.

Entirely apart from the lack of any factual basis to support appellant's claim that the marital property sold for an inadequate price, the point lacks any standing as a ground for relief on appeal. The assertion made in appellant's brief is that the trial court erred "in refusing to set aside the judicial sale" because appellant was prohibited from attending the sale and because the price obtained was inadequate. Even were the latter contentions to afford any legal cause to charge the trial court with error, the proceedings in this case did not amount to a "judicial sale" and there was neither opportunity for nor jurisdiction in the trial court to set aside the sale consummated by the auction.

As was noted earlier in this opinion, the auction sale of the farm was the method agreed between the parties in November, 1982 as the means to convert the farm to a divisible form. The court's order formalized that agreement, but the details of the sale were left to be arranged by the parties without condition of confirmation by the court. The sale was conducted without participation by any court officer and there

was no undertaking by the court to accomplish a transfer of ownership. Appellant, without current protest, joined respondent in executing deeds of conveyance to the sale purchasers. The court did exercise control over distribution of the sale proceeds, but that does not serve to convert the auction arranged by the parties into a judicial sale.

Moreover, appellant voiced no objection to the price obtained for the property until some thirty days after the deeds had been delivered to the auction sale purchasers. Apart from the bare contention that he was entitled to have the sale set aside, appellant offers no suggestion as to how the trial court could have divested ownership of the property from the sale purchasers when those persons were not parties to any action before the court and when they had paid the purchase bids and received delivery of the deeds. So, too, does appellant ignore the inability of the court, at the time of appellant's first complaint, to recall the monies disbursed in payment of the mortgage debt, taxes and expenses and the consequent lack of funds to refund the bids to the purchasers even were the sale set aside.

The point on appeal charging error of the court in refusing to set aside the sale of marital assets is totally devoid of merit, it presents no justiciable question and is readily recognizable on analysis as having no potential for successful advocacy on appeal.

In the two additional points, appellant complains that the division of the net sale proceeds from the dairy farm liquidation was unfairly balanced in favor of respondent, but here again he reverts to argument that the sale produced an inadequate price. Beyond that, he claims that a division which awarded him a 40% share was unjust. No authority for this proposition is cited in his brief which, on the one hand concedes that an equal division is not mandated, but on the other argues that none of the factors recited in § 452.330.1, RSMo Supp.1982 justified granting respondent a greater share than was set off to him.

In his contention that none of the factors set out in the statute weighed in favor of either party, appellant overlooks the evidence at trial as to his conduct during the marriage. The evidence by the wife was uncontradicted that appellant engaged in extra-marital affairs on a number of occasions and he himself admitted various acts of sexual abuse committed on respondent over a period of years. There can be no basis to charge error as to the marital property division in view of the record in the case and the broad discretion vested in the trial court. *Sarandos v. Sarandos,* 643 S.W.2d 854, 856 (Mo.App.1982). In apparent recognition of this circumstance, appellant makes no more than a superficial argument and cites cases which, upon examination, stand as authority for affirming the trial court's judgment.

Finally, appellant claims it was error for the trial court to assess him the responsibility for payment of one-half of respondent's total attorney fees of $4500.00. On this account he contends the respective financial resources of the parties should require respondent to pay the full amount for her own representation. He also argues that the fee charged by respondent's attorney was excessive because the case was "an ordinary dissolution proceeding."

The extent of the prior recitation in this opinion setting out the proceedings in the case serves to refute appellant's claim that the case was routine. Respondent's attorney presented his record of time which, to February 4, 1983, totalled 96 hours. The trial court accepted a charge of $50.00 an hour as reasonable. Even the most perfunctory reading of the case record demonstrates that a substantial portion of the legal work in the case was solely attributable to appellant's intransigence and his persistent refusal to accept the authority of the court's orders. As the trial judge himself observed, appellant was the most difficult person with whom the court had been obliged to deal.

The only basis on which appellant may find support in the record to buttress his claim that the fees were erroneously

assessed against him is his claim that the division of the auction sale proceeds left the respondent with superior resources. Ability to pay, however, is but one factor to be considered by the trial court. Claims of abuse of discretion in these circumstances are of dubious nature at best and often are summarily rejected on appeal. *Flach v. Flach*, 645 S.W.2d 718, 722 (Mo.App.1982). Here, the trial court had ample evidence to award attorney fees to respondent and did not abuse its discretion in doing so.

The final issue in the case is presented by respondent's motion for damages for frivolous appeal. The motion asserts that the appeal was not taken in good faith, that the points presented are totally devoid of merit and that the questions raised are not even fairly debatable. Also noted is the absence of any cited cases in appellant's brief in point on the issues raised. Appellant's response to the motion is perfunctory and cursory.

 Rule 84.19 authorizes an award of damages to the respondent if the appellate court determines an appeal is frivolous. A frivolous appeal is defined as one which presents no justiciable question and is so readily recognized as devoid of merit on the face of the record that there is little prospect that the appeal can succeed. *Bowman v. Burlington Northern, Inc.*, 645 S.W.2d 9, 13 (Mo.App.1982). The purpose for assessing damages for frivolous appeals is to prevent congestion of appellate dockets with unmeritorious cases and to compensate respondents for the delay and expense of responding to a futile appeal. *Doran, Inc. v. James A. Green, Jr. & Co.*, 654 S.W.2d 106, 110 (Mo.App.1983).

 As the foregoing opinion has demonstrated, the principal contention by appellant that this court should direct the trial court to set aside the auction sale of marital assets patently presents no cause upon which appellant could conceivably obtain relief. The purchasers at the sale, who now hold title to the property in question, are not parties to the action, the conveyances by which they acquired title were executed by appellant without protest, and full restitution of the purchase prices can-

not be made because the mortgage debts, taxes and other expenses have already been paid as necessary conditions of the completed sales. Appellant has, in this aspect of the case, urged a cause so lacking in merit as to be readily recognized as frivolous. The points as to property division and the award of attorney fees appear only as adjuncts to appellant's complaint about the auction sale and are not seriously asserted on their independent merits.

 As this court recently held in *Mullen v. Kennard*, No. WD 35107 decided June 12, 1984, consideration must be given to the available resources of the court needed to decide meritorious appeals and the burden on those resources which appeals without merit impose. Here, it is apparent throughout the course of this litigation that appellant has consistently abused the judicial process as a means of expressing his antagonism toward respondent. An appeal with that objective and under the circumstances here warrants an award of damages to respondent in the amount of $1,000.00. The judgment previously entered is otherwise affirmed and the cause is remanded with direction that the trial court enter an additional judgment in favor of respondent and against appellant for damages in the amount of $1,000.00.

All concur.