682 S.W.2d 486 (1984)
P.L.K., Respondent,
v.
R.J.K., Appellant.
No. WD 35743.
Missouri Court of Appeals, Western District.
December 4, 1984.
*487 John H. Lake, Jefferson City, for appellant.
William L. Orr, Columbia, for respondent.
Before PRITCHARD, P.J., and SHANGLER and BERREY, JJ.
BERREY, Judge.
R.J.K. appeals from the decree dissolving his marriage with P.L.K. assigning as error the award of maintenance for an indefinite period, the amount of the maintenance award, and the distribution of the marital property. Judgment affirmed.
After twenty years of marriage, P.L.K. filed a petition for dissolution in August, 1983, apparently because R.J.K. admitted that he was having a relationship with another woman. The parties have two children, a son J.K. age twenty at the time of the dissolution, and a son D.K. age eleven at the time of the dissolution. J.K. is a student at the University of Missouri.
R.J.K. is employed as editor-in-chief of a sports publication. His annual salary for 1984 is $68,000.00. The policy of the publication is to award annual bonuses to its employees on the basis of merit and the success of the publication. R.J.K.'s bonus for 1983 was $16,000.00. He estimated that his bonus for 1984 would be at least $15,000.00. His monthly income after taxes is approximately $3,500.00. R.J.K. has had a career spanning more than twenty years as a sports writer for several publications. He was employed for eleven years with a St. Louis publication. When he left that publication in 1979 to assume his *488 present employment his annual salary was $30,000.00.
P.L.K. is a licensed real estate agent. In 1983, her first year of practice as a parttime agent, she earned approximately $6,000.00. Now P.L.K. no longer wants to work as a real estate agent. During her marriage, she was employed in a variety of jobs. She was briefly employed with a radio station, a television station, as a county supervisor, and raising livestock on the family farm.
P.L.K. now wants to finish her undergraduate degree and to attend law school. She testified at the dissolution hearing that she is very intelligent, with an IQ of 147, and is highly motivated to prepare herself for a career that will be "meaningful" to her. She has made no attempt since her separation from R.J.K. to pursue her career as a real estate agent or to seek any other employment. She was thirty-nine years of age at the time of the dissolution and she testified at the hearing that she is healthy and has no disabilities.
At the dissolution hearing the appellant testified that he had a $100,000 life insurance policy on his life with L.M., his girlfriend, as beneficiary. He also testified that L.M. was living with him in the Pacific, Missouri, house, apparently before the house was set off to P.L.K., and that he took her to lunch at least weekly and to hotels and motels where they engaged in extramarital sex.
Appellant admitted to frequent drinking but denied a problem. He acknowledged he passed out occasionally. During their twenty-year marriage he stated he passed out about twenty times. Respondent testified that R.J.K. drank every night the past few years and passed out almost every night. Appellant admitted hitting respondent on two occasions. He accused her of having a "violent temper, especially when she drinks."
Following the revelation about his girlfriend, respondent testified she was "totally broken hearted" and a bitter fight ensued. Appellant abused the respondent and gave her two black eyes. He took her to her parents in Columbia, Missouri. Twice he administered beatings, the evening of the 19th of August and the next morning. She was examined at a local hospital where a counselor advised her she was a "battered woman." She was also advised by members of the staff and a doctor not to return to St. Louis, "that once a husband started beating a woman, that there was nothing that would stop him from doing it again and in all likelihood it would reoccur." She had "bruises all over" and lots of marks around her neck. The latter was inflicted the next morning. Respondent awoke in bed with appellant and was thoroughly repulsed. She got up and then he came and stood nude in front of her. She reached out toward his testicles and said, "How could you have touched her with those? That's where my children came from." Appellant then grabbed her around the neck and started beating her head against the floor. "He just banged my head and banged it against the floor and I said something about wanting to die. I felt like I was going to right then."
Respondent testified R.J.K. had blackened her eye during a previous altercation, and on one or two occasions when he had been drinking at home that "My nineteen year old son had to pull him off me because he was hitting at me because he wanted to go get in the truck and he was in no condition to drive."
Appellant complained respondent disparaged his job and was a constant complainer. Whereas respondent complained that in addition to the foregoing appellant would pick fights and would not eat what was prepared for him. That despite respondent's thyroid surgery and a hiatal hernia, "he was not very concerned ...." It was during this time that "he was involved with this girl."
He acknowledged that she had never been unfaithful to him, that she took good care of and raised their children, that she kept records for his Softball team and went to corporate functions. She stated that she was a homemaker, cooked, cleaned, cared *489 for the children, had a big garden and raised beef on occasion.
The circuit court entered a decree dissolving the marriage and awarding custody of the children and child support to P.L.K. It also awarded P.L.K. maintenance in the amount of $2,000.00 per month until the house in Pacific, Missouri, was sold, and $1,700.00 per month afterward. P.L.K. was awarded the Pacific real estate, an automobile, and various personal items. R.J.K. was awarded the farm in Alhambra, Illinois, a pickup truck, and some personal items.
On appeal, R.J.K. argues that the trial court erred by awarding maintenance for an indefinite period and by awarding an excessive amount of maintenance and marital property to P.L.K. This court must affirm the decree of the circuit court unless the decree has no substantial evidence to support it, is against the weight of the evidence, or erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); Miller v. Miller, 635 S.W.2d 350, 352 (Mo.App.1982). The lower court is vested with considerable discretion in awarding maintenance and dividing marital property. Miller v. Miller, supra, at 352. This court may set aside its decree only if we firmly believe that it is wrong. Murphy v. Carron, supra, at 32; Miller v. Miller, supra, at 352.
Although P.L.K. says she is motivated to complete law school and begin a career as an attorney, any attempt by the lower court to set a time limit within which she must achieve these goals would have been merely speculative. Maintenance awards of limited duration should not be based on speculation about the future circumstances of the parties. Turner v. Turner, 650 S.W.2d 662, 664 (Mo.App. 1983). The circuit courts should make awards of limited duration only if they have evidence before them of an impending change in the financial condition of either of the parties. Id. See also In re Marriage of Powers, 527 S.W.2d 949, 955 (Mo. App.1975). The amount of time P.L.K. will need to complete her education is sufficiently uncertain that the trial court did not abuse its discretion by refusing to limit the duration of the maintenance award. In re Marriage of Powers, at 955. R.J.K.'s recourse is to institute a proceeding to modify the award when P.L.K.'s circumstances change. Id., at 956.
R.J.K.'s second argument is that the amount of the maintenance award was excessive. The factors the circuit court must consider in determining whether to award maintenance are enumerated in § 452.335, RSMo 1978. The circuit court made no explicit findings with respect to these factors. In the absence of a specific request by counsel, the factors need not be the subject of findings of fact or conclusions of law. Broyles v. Broyles, 555 S.W.2d 696, 698 (Mo.App.1977). When no such request is made, all fact issues must be considered found in accord with the result reached by the circuit court. Rule 73.01(a)(2). Analysis of the circumstances of the parties in light of the factors listed in § 452.335 supports the amount of the award.
With respect to P.L.K.'s financial circumstances and her ability to meet her needs independently, the evidence demonstrates that while she is attending school she has only a limited ability to support herself. P.L.K. sold the Pacific, Missouri, property. The proceeds from the property should help defray her housing expenses, but she will also have to pay tuition and other expenses. The court could have found from the evidence that while she is a fulltime student she is unable to contribute to her own support.
The second factor to be considered is how long P.L.K. needs to acquire sufficient education to enable her to find appropriate employment. This period should not be extended. P.L.K. testified that she plans to attend law school because she wants to establish a career for herself. The evidence supports the conclusion that she will be able to complete her education in a reasonable amount of time, such as four years, and that she will need a substantial amount of maintenance to meet her needs *490 during this period. Third, the statute requires the circuit courts to consider the standard of living enjoyed by the parties during the marriage. The parties had a modest income until about 1979. After that year, R.J.K.'s success in his profession afforded them a better standard of living. They moved to a larger house in an affluent neighborhood. Fourth, the parties were married for twenty years, and P.L.K. only worked outside the home for a few of those years. The evidence regarding these factors supports the maintenance award, which is necessary while P.L.K. is continuing her education to provide the standard of living to which she had become accustomed in the last few years of her marriage.
The fifth factor the court was required to consider is P.L.K.'s age and physical and emotional health. She testified that she is healthy and highly motivated to provide for herself. This factor weighs heavily against ordering substantial maintenance for an indefinite period. But it is not unreasonable for R.J.K. to contribute to her support for the period while she continues her education. The sixth factor the court was obliged to consider is the ability of the party who has been ordered to pay maintenance to meet the needs of both parties. R.J.K. is presently able to contribute to P.L.K.'s support. The evidence shows that his income for 1984 is expected to be more than $83,000.00. The maintenance award of $1,700.00 per month provides P.L.K. with an annual income of $20,400.00. There was evidence to indicate that R.J.K. will have sufficient funds to meet his own needs.
The final factor that the court must consider is the conduct of the parties during the marriage. P.L.K.'s conduct, according to the testimony at the dissolution hearing, was exemplary. The trial court could have found that R.J.K.'s misconduct supported a substantial award. This court finds that the circuit court did not abuse its discretion by awarding P.L.K. maintenance of $1,700.00 per month.[1]
For his third point on appeal, R.J.K. disputes the award of the Pacific, Missouri, property to P.L.K. P.L.K. sold the Pacific property while this appeal was pending. R.J.K. claims he should receive some of the proceeds from the sale because the Pacific house was the couple's principal asset.
The trial court is vested with considerable discretion under § 452.330, RSMo Supp.1984 to divide the marital property as it deems just. Our review is governed by the framework set forth above, from Murphy v. Carron, supra. This court is limited on appeal to the determination whether the trial court abused its discretion by ordering the marital property to be divided as it did. In re Marriage of Powers, supra, at 951.
R.J.K. argues that the property award to P.L.K. was excessive. The net proceeds from the Pacific house, $24,239.46, when added to the other items, makes the total value of the property awarded to P.L.K. $35,339.46. The value of the property awarded to R.J.K., estimating that his equity in the Alhambra property is $6,000.00, was $17,026.00. The court was permitted to consider the amount of the maintenance award and the income-producing ability of the parties together with the property division. Section 452.330, RSMo 1978. In light of the evidence regarding the disparity in their present income potential and P.L.K.'s need to provide a home for their children, the award of the Pacific property to her was not an abuse of discretion by the trial court.
The final issue in this case is P.L.K.'s request that her attorney's fees be assessed against R.J.K. for pursuing a frivolous appeal. Rule 84.19 permits the appellate court to award damages against the appellant if it determines that the appeal is *491 frivolous. A frivolous appeal is one which presents no justicable question and is so devoid of merit that there is little prospect that it can succeed. Andrews v. Andrews, 673 S.W.2d 495, 500 (Mo.App.1984). R.J. K.'s contentions on appeal are that the maintenance award should be limited in duration and that the amount of maintenance and marital property awarded to P.L.K. was excessive. The trial court is given considerable discretion to divide the property and award maintenance as it deems just. But the propriety of the award in this case was fairly debatable. In Andrews, the husband appealed requesting that this court set aside the auction sale of the marital assets. This court noted in that case that the appeal patently presented no cause upon which the husband could conceivably obtain relief. Id., at 500. The husband, by appealing, had abused the judicial process to express his antagonism toward his wife. By contrast, R.J.K.'s appeal presents two issues that arguably merit discussion. The court declines to award damages against him for P.L.K.'s attorney's fees.
The dissolution decree is affirmed.
All concur.
NOTES
[1] Curiously, the impact of federal income taxes has not been raised or briefed by either party. A review of the applicable sections of the 1984 Internal Revenue Code reveals the significant impact that taxes have in effectively reducing the amounts paid by the husband under this particular maintenance award. Interested attorneys should not overlook this important issue.