**Victor E. BARBER, d/b/a Connie's Restaurant, Appellant,**

v.

**COLUMBIA BUILDING, LTD., Marlin Industries, Inc., Riva Management Company, & Camelback Properties, Ltd., Respondents.**

**No. WD 37814.**

Missouri Court of Appeals,
Western District.

Nov. 25, 1986.

Gary L. Smith, Kansas City, for appellant.

James S. Margolin, Terry L. Tyrrell, Florian Frederick Chess, Margolin and Kirwan, Kansas City, for respondent Camelback Properties, Ltd.

Judith P. Rea, Tamara T. Ewing, Rea & Russell, Kansas City, for respondents Columbia Bldg., Ltd., Marlin Industries, Inc., and Riva Management Co.

Before BERREY, J., Presiding and PRITCHARD and DIXON, JJ.

DIXON, Judge.

Plaintiff appeals a trial court judgment which declared the rights of the parties to an option agreement and awarded plaintiff damages but denied him injunctive relief. The singular issue for determination on appeal is whether the trial court properly interpreted the option agreement.

Plaintiff was the owner of a building on Walnut Street in Kansas City, Missouri. He sold the building to defendant Riva Management Company and retained a lease on a restaurant he operated on the first floor of the building. Section 18(a) of the lease between plaintiff and Riva provided Riva with the continuing option to purchase plaintiff's leasehold. The time and notice requirements for exercising the option to buy were set forth in the first two sentences of Section 18(d) of the lease. The parties' responsibilities and the details of closing were specified in the last three sentences of Section 18(d). Section 18(d) in pertinent part reads as follows:

(d) To exercise its option hereinabove granted, Landlord shall notify Tenant in writing of such exercise at least six (6) months in advance of the proposed acqui-sition and termination date. Such notice shall state that Landlord is exercising its buy-out option and shall specify the date on which Landlord shall pay Tenant the applicable purchase price specified in (a) or (b) above and on which Tenant shall surrender possession of the Premises to Landlord (the "closing date"). On the closing date, Landlord shall pay the appropriate purchase price to Tenant, Tenant shall execute and deliver to Landlord such instrument in recordable form as Landlord may reasonably request to acknowledge termination of this Lease and Tenant's interest hereunder, and Tenant shall peaceably surrender possession of

the Premises to Landlord in good condition and repair, ordinary wear and tear and damage thereto from causes beyond the reasonable control of Tenant, excepted. By the closing date, Tenant shall have removed from the Premises all of its removable trade fixtures and equipment and moveable furniture and any improvements designated by Landlord for removal as provided in Section 14(c). Closing shall take place at Landlord's offices or such other place in Kansas City, Missouri as Landlord may designate.

Riva sold its interest in the property to defendant Marlin Industries, Inc., which in turn sold to defendant Columbia Building, Ltd. Marlin is the general partner of the limited partnership of Columbia Building. Riva has continued as building manager.

In early 1985, Columbia Building had Riva give plaintiff notice that Columbia Building was exercising its option to buy out the lease. The notice designated July 31, 1985, as the closing date. Shortly after giving the notice, Columbia Building entered into a ten year lease agreement with defendant Camelback Properties, Ltd., in which Camelback leased an area of the Walnut Street Building that included the restaurant.

After receiving the notice, plaintiff acknowledged in writing his intention to vacate and surrender the premises under the terms of the exercised option. By July 31, 1985, the plaintiff had removed all equipment, trade fixtures, carpeting, furniture and removable improvements from the leasehold.

On Tuesday, July 30, 1985, Mark Anderson, President of Marlin Industries, telephoned attorney William Austin, who was then representing plaintiff, to discuss the payment owed plaintiff. Mr. Anderson wanted to negotiate a thirty day installment arrangement with the plaintiff. Mr. Anderson offered $100,000 on the payment date with the remaining $150,000 to be paid thirty days later along with a bonus or interest at a reasonable rate. The phone

call ended with Mr. Austin saying he would consult with plaintiff and get back to Mr. Anderson with plaintiff's response. The plaintiff asserts a different version of the phone call. Plaintiff asserts that Mr. Anderson said that defendants could not pay the amount due. The content of this telephone conversation is immaterial in the disposition of this case. Having heard nothing further from Mr. Austin, Mr. Anderson called Mr. Austin's office on July 31, 1985, to find out how the plaintiff wanted to proceed with the payment, but was unable to reach Mr. Austin.

On August 2, 1985, Mr. Austin delivered to defendant Riva a letter which stated that since payment had not been received by the plaintiff the option was nullified and plaintiff was entitled to "retain possession" under the lease. This was plaintiff's position despite the fact that plaintiff had surrendered possession of the premises on July 31 and was not in physical possession after that time. On August 6, 1985, Columbia Building tendered payment in the amount of $250,000 along with a letter offering twelve percent (12%) interest from July 31, 1985, through August 6, 1985. In a letter also dated August 6, 1985, Mr. Austin returned Columbia Building's non-negotiated check to Riva thereby rejecting payment.

On August 13, plaintiff filed a petition for damages, also seeking a temporary restraining order, a preliminary and permanent injunction, and a declaratory judgment affirming plaintiff's possessory right to the leasehold. The Court entered its order on November 6, 1985, finding that Columbia Building had properly exercised its option to buy notwithstanding its failure to pay the purchase price on the closing date. The Court specifically ruled that the notice given plaintiff of Columbia Building's intention to exercise the option complied with the terms of the contract, and plaintiff was entitled only to the damages of $250,000 plus the interest accruing from July 31 to August 6, the date payment was tendered. Further, the Court ruled that plaintiff had an adequate remedy at law and was not entitled to injunctive relief.

Finally, the Court ruled that plaintiff had no right to declaratory relief because plaintiff's possessory rights were terminated upon the proper exercise of the option.

Although the plaintiff-appellant filed a brief containing four points, he conceded at oral argument that each point depends upon a determination that the trial court erred in finding that the option was properly exercised notwithstanding nonpayment of the purchase price on the closing date. In support of his contention of trial court error, plaintiff argues that since this is an option contract, it must be strictly construed; any variation from the terms of the option is fatal to the exercise of the option. The validity of the argument depends upon the payment of the purchase price being necessary for an exercise of the option. The cases cited by the plaintiff do not deal with that issue.

One case, close in its facts to the instant case, is controlling. In *Shapiro v. Childs Co.*, 222 Mo.App. 1126, 17 S.W.2d 677 (1929), the court held under a very similar agreement that once notice of the exercise of the option has been given, the rights of the parties are fixed.

In *Shapiro*, the facts are succinctly stated by the court as follows:

> The lease provided that the lessor might terminate same at any time before maturity if it should dispose of its own leasehold of the whole property, or should make a bona fide lease for the entire building to one tenant; but this right was conditioned upon giving plaintiff six months' written notice, and upon the further condition of paying to plaintiff the sum of $3,500 "when the premises are redelivered under this paragraph."

222 Mo.App. at 1127, 17 S.W.2d at 677.

The holding is as succinctly expressed in the following:

> Upon service of the notice by defendant on plaintiff in March, 1924, in strict accordance with the privilege given in the lease, the rights of the parties became fixed. Defendant at once became entitled to possession on October 1st, and

plaintiff became entitled, on said date, to the payment of $3,500. The termination of the lease was not contingent upon either redelivery of the premises or payment of the bonus at that date. The notice itself established the termination. If lessee remained over, he became subject to eviction, and if lessor failed to pay the agreed bonus, he was liable in an action therefor.

222 Mo.App. at 1131, 17 S.W.2d at 679.

Interestingly, the premises leased in *Shapiro* were also on Walnut Street in Kansas City, only two blocks from the instant premises. It is difficult to imagine a factual and legal matrix more analogous than the instant and the cited case.

Plaintiff attempts to distinguish the *Shapiro* case by asserting that the *Shapiro* court did not determine the rights of a tenant in possession. Plaintiff's attempted distinction fails, however, because the plaintiff was not in possession in the instant case. Plaintiff here *stipulated* that he surrendered possession. Furthermore, as *Shapiro* notes, the failure of the tenant to surrender possession would be no different than the lessor's failure to pay. 222 Mo.App. at 1131, 17 S.W.2d at 679.

■ The commercial sense of the transaction is recognized by *Shapiro*. When the contract requires, as this one does, that the premises be surrendered, the lessee cannot wait until the closing date to take action. Other premises must be secured and complex fixtures and equipment must be removed. The rights of the parties must be fixed and determined at the time the option is exercised. The lessor may not revoke its attempted exercise of the option by simply refusing to pay because the lessee would be left out of physical possession and with considerable expense. It may be that such arrangements as this leave the lessee at the mercy of the lessor as to payment, but certainly the lessee is not without remedy. The option agreement *could have* provided for payment upon exercise of the option but in fact it did not. The trial court properly interpreted the agreement of the parties.

Defendant Camelback Properties, Inc., has requested damages for frivolous appeal. During oral argument, Camelback pointed out that the suit by plaintiff has hindered Camelback in its use of the premises without alleviating its obligation to pay rent. Camelback, however, made it clear that it sought damages for the appeal only and suggested it be awarded an amount commensurate with its attorney's fees and costs on the appeal. The first question to be determined is the frivolity of the appeal.

■ Rule 84.19 provides that "If an appellate court shall determine that an appeal is frivolous it may award damages to the respondent as the court shall deem just and proper." The purpose of such a rule is to prevent congestion of appellate dockets with unmeritorious cases and to compensate respondents for the time and cost of responding to a futile appeal. *Andrews v. Andrews*, 673 S.W.2d 495, 500 (Mo.App. 1984). While no hard and fast rule as to what constitutes a frivolous appeal has been advanced and the issue must be considered on a case-by-case basis, *Richey v. Meter Investments, Inc.*, 680 S.W.2d 381, 384 (Mo.App.1984), the test generally used is whether the appeal presents any justiciable question and whether it is so readily recognizable as devoid of merit on the face of the record that there is little prospect of success. *Means v. Sears, Roebuck and Co.*, 550 S.W.2d 780, 789 (Mo. banc 1977). The issues presented on appeal must be at least fairly debatable in order to avoid assessment of damages for frivolous appeals. *Doran, Inc. v. Green*, 654 S.W.2d 106, 110–111 (Mo.App.1983). Damages for frivolous appeal should be awarded with great caution as the appellate court must not chill appeals of even slight or colorable merit. *Breshears v. Malan Oil Co.*, 671 S.W.2d 402, 404 (Mo.App.1984). Even slight merit is evidence of good faith on the part of the appellant. *Id.*

■ Based upon these principles, there is no doubt this appeal is frivolous. The *Shapiro* case is controlling, and the plaintiff's attempts to distinguish it are completely

futile. Plaintiff did not argue, in his brief or in oral argument, that the existing authority should be overruled. Counsel was unable to suggest any policy basis for not following *Shapiro*.

The amount of damages for frivolous appeal is assessed at $2,500, which is one percent of the judgment. Such an amount seems appropriate in view of the cost of appeal asserted by Camelback during oral argument.

The judgment of the trial court is affirmed and damages for frivolous appeal in the amount of $2,500 are assessed against plaintiff, Victor E. Barber, d/b/a Connie's Restaurant, and in favor of Camelback Properties, Ltd.

All concur.