ACCEPTED
07-15-00061-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
9/4/2015 10:49:59 AM
Vivian Long, Clerk

## NO. 07-15-00061-CR

In the
COURT OF APPEALS
For the
SEVENTH JUDICIAL DISTRICT OF TEXAS
At Amarillo

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
9/4/2015 10:49:59 AM
VIVIAN LONG
CLERK

_____

**No. 24655A**
In the 47th Judicial District Court
Of Randall County, Texas

_____

**DONALD WAYNE LEWIS**
*Appellant*

**v.**

**THE STATE OF TEXAS**
*Appellee*

_____

BRIEF OF THE APPELLANT

_____


**TINA DAVIS RINCONES**
Law Office of Tina Davis Rincones
109 E 6th Street
Plainview, Texas 79072
Telephone (806) 429-0706
Facsimile (806) 553-4424
SBN 24030776

ATTORNEY FOR APPELLANT

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS
[Rule 38.1(b), Tex. R. App. Proc.]

IDENTITY OF PARTIES AND COUNSEL ................................................................ iv

RECORD REFERENCES ........................................................................................... v

PARTY REFERENCES .............................................................................................. v

INDEX OF AUTHORITIES ...................................................................................... vi

STATEMENT REGARDING ORAL ARGUMENT ............................................... viii

STATEMENT OF THE CASE .................................................................................... i

ISSUES PRESENTED ................................................................................................ 3

STATEMENT OF FACTS .......................................................................................... 4

SUMMARY OF ARGUMENT ................................................................................. 10

ARGUMENT ............................................................................................................ 11

1.    THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S
MOTION TO SUPPRESS EVIDENCE, i.e. THE ARREST WARRANT. .............. 11

*a. Background for Review of Arrest Warrant* ......................................................... 11

*b. Standard of Review* .............................................................................................. 11

*c. The Arrest Warrant Must be Reviewed in Light of Franks v. Delaware –
Misrepresentation, Omissions, False Statements Do Not, in the proper case,
Constitute Sufficient Probable Cause* ....................................................................... 12

*d. If The Arrest Warrant Was Invalid The Post Script Search Warrant Is Also
Invalid* ........................................................................................................................ 15

2.    THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S
MOTION TO SUPPRESS EVIDENCE, i.e. THE VEHICLE WAS SEIZED
WITHOUT LAWFUL AUTHORITY. ....................................................................... 16

*a. Standard of Review* .............................................................................................. 16

*b. Martinez v. State, Authority Cited by the Court, Does not Apply to the Facts of This
Case* ............................................................................................................................ 17

*c. The Fourth Amendment of the United States Constitution and The Texas
Constitution Article I, Section 9 Were Violated in this Case* ................................... 18

3.    THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO
SUPPRESS THE SEIZURE OF THE VEHICLE AND ITS CONTENTS
BECAUSE THE VEHICLE WAS NOT SUBJECT TO THE "PLAIN VIEW"
DOCTRINE. ............................................................................................................... 22

*a. Standard of Review* .............................................................................................. 22

*b. Plain View Doctrine Does Not Apply to the Facts in this Case as a Remedy for
an Invalid Arrest Warrant.* ........................................................................................ 23

4. **THE EVIDENCE WAS INSUFFICIENT FOR CONVICTION IN THIS CASE.** ........................................................................................ 26

*a. Standard of Review* .......................................................................... 26

*b. There is No Evidence Lewis Was in the Habitation; There Was No Time to Accomplish All Elements Necessary for Conviction; The Evidence Admitted at Trial is Inconsistent With What the State Relies Upon as Evidence of the Alleged Crime* 27

**CONCLUSION** ....................................................................................... 29

**PRAYER** ................................................................................................ 29

**CERTIFICATE OF SERVICE** ............................................................... 30

**CERTIFICATE OF WORD COUNT** ....................................................... 30

## IDENTITY OF PARTIES AND COUNSEL
[Rule 38.1(a), Tex. R. App. Proc.]

The following is a complete list of all parties to the trial court's judgment or appealable order, as well as the names and addresses of trial and appellate counsel.

Donald Wayne Lewis, Appellant

The State of Texas, Appellee

FOR THE APPELLANT:

FOR THE STATE OF TEXAS:

Counsel for Trial by Judge:

Counsel for Trial by Judge:

Ronald Spriggs
Spriggs Law Offices
1011 S. Jackson St
Amarillo, Texas 79101
Phone: 806-376-7260
Fax: 806-372-3298
SBN: 00792853

James A. Farren
Randall County District Attorney
2309 Russell Long Blvd, Suite 120
Canyon, Texas 79105
Phone: 806-468-5570
Fax 806-468-5566
SBN: 06839400

Adam Tisdell
Tisdell Law Firm
821 SW 9th Ave #200
Amarillo, Texas 79101
Phone: 806-352-4844
Fax: 806-214-3177
SBN: 24067909

Robert Allen Love, II
Assistant District Attorney
2309 Russell Long Blvd, Suite 120
Canyon, Texas 79105
Phone: 806-468-5570
Fax: 806-468-5566
SBN: 00787925

Counsel for Appeal:

Counsel for Appeal:

Tina Davis Rincones
Attorney at Law
109 E 6th Street
Plainview, Texas 79072
Tel: (806) 429-0706
Fax: (806) 553-4424

James A. Farren/Kristy Wright
Randall County District Attorney
2309 Russell Long Blvd, Suite 120
Canyon, Texas 79105
Tel: (806) 468-5570
Fax: (806) 468-5566

## RECORD REFERENCES

The Clerk's Record in this case contains one original volume and is referenced in this brief as "C.R." The Clerk's Record also contains a supplemental volume and will be referenced in this brief as "S.C.R."

The Reporter's Record in this case is voluminous. In this brief references to the Reporter's Record will be made by the abbreviation "R.R." followed by the volume, page and line.

## PARTY REFERENCES

The Appellant is Donald Wayne Lewis and shall be referred to as "Lewis" or "Appellant." The State will be referred to as the "State" or "Appellee."

# INDEX OF AUTHORITIES

**Cases**

*Ramirez v. State*, 105 S.W.3d 730 (Tex. App. 2003) ................................................ 24

*Benavides* v. *State,* 600 S.W.2d 809 (Tex. Crim. App. 1980)................................ 18,19

*Benitez v. State,* not reported in S.W.3d 2010 WL 4909954, (Tex. App. – Austin 2010) 27

*Blake v. State*, 125 S.W.3d 717 (Tex.App.–Houston [1st Dist.] 2003, no pet.). .............. 11

*Colorado v. Bertine, 419* U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) ............ 17, 19, 20

*Conner v. State,* 67 S.W.3d 192, 197 (Tex. Crim. App. 2001)........................................ 26

*Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct.2022, 29 L.Ed.2d 564 (1971)
  *(plurality opinion)* ................................................................................... 23

*Daniels v. State,* 600 S.W.2d 813 (Tex. Crim. App. 1980) ........................................... 18

*Daugherty v. State,* 931 S.W.2d 268 (Tex. Crim. App. 1996) ...................................... 23

*Delgado* v. *State,* 718 S.W.2d 718 (Tex.Crim.App.1986). ...................................... 18, 19

*Dromgoole v. State*, No. 01-13-00931-CR, 2015 WL 4497978, (Tex. App. July 23, 2015)
  ................................................................................................................ 11

*Evers* v. *State, 516* S.W2d 46 (Tex. Crim. App. 1978). .............................................. 18

*Fenton* v. *State,* 785 S.W.2d 443 (Tex. App. - Austin 1990, no pet.);.......................... 18

*Flanagan v. State*, 675 S.W.2d 734 (Tex. Crim. App. 1984) ...................................... 26

*Florida v. Wells,* 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) ........................... 19

*Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ............... 11, 13

*Gauldin v. State,* 683 S.W.2d 4 1 1 ( Tex. Crim. App. 1984). ...................................... 18

*Gords* v. *State,* 824S.W.2d 785 (Tex. App. 1992) ................................................. 18, 19

*Guzman v. State,* 955 S.W. 2d 85 (Tex. Crim. App. 1997). ...................................... 10, 22

*Harris v. State,* 790 S.W.2d 568 (Tex.Crim.App.1989)............................................... 24

*Heitman* v. *State,* 815 S.W.2d 681 (Tex.Crim.App.1991)........................................... 17

*Homme v. Varing*, 852 S.W.2d 74 (Tex. App.--Beaumont 1993, no writ)...................... 25

*Horton* v. *California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)............ 22

*Illinois* v. *Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).............. 17, 19

*Jackson v. Virginia,* 433 U.S. 307 (1979)................................................................. 26

*Johnson v. State*, not reported in S.W.3d 2010 WL 4813706 (Tex. App. – Texarkana
  2010) ....................................................................................................... 27

*Keehn v. State,* 279 S.W.3d 330 (Tex. Crim. App. 2009) .................... 10, 11, 15, 16, 22

*Martinez v. State*, 17 S.W.3d 677 (Tex. Crim. App. 2000) ................................. 13, 16, 24

*McNairy v. State,* 835 S.W.2d 101 (Tex. Crim. App. 1991).......................................... 23

*Nassar v. Hughes*, 882 S.W.2d 36 (Tex. App.--Houston [1st Dist.] 1994, writ denied) .. 25

*Perry* v. *State,* 933 S.W.2d 249 (Tex. App. 1996).................................................. 18, 19

*Rankin v. State*, 46 S.W.3d 899 (Tex. Crim. App. 2001) ............................................ 25

*Smith v. State*, 634 S.W. 2d 721 (Tex. Crim. App. 1982) ............................... 10, 13, 15

*Smith* v. *State,* 759 S.W.2d 163 (Tex. App.-Houston [14th Dist.] 1988, pet. ref d) ....... 18

*South Dakota* v.*Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)....... 19

*State v. Davenport,* 866 S.W.2d 767 (Tex. App.--San Antonio 1993, no pet.). .............. 25

*State v. Kelly,* 204 S.W.3d 808 (Tex. Crim. App. 2006) ......................................... 15, 22

*State v. Lewallen*, 927 S.W. 2d 737 (Tex.App.—Fort Worth 1996, no pet.).................... 25

*Stewart v. State,* 681 S.W.2d 774 (Tex. App.-Houston [14th Dist.] 1984, pet. ref'd) 23

*United States v. Salmon,* 944 F.2d 1106 (3d Cir.1991) ............................................. 19

*United States v. Bush, 641* F.2d 357 (3d Cir.1981) ........................................................... 20
*United States* v. *Frank,* 864 F.2d 992 (3d Cir. 1988) ....................................................... 20

**Statutes**

TEXAS CODE OF CRIMINAL PROCEDURE, ART. 18.10 .................................................. 14, 16
TEXAS CODE OF CRIMINAL PROCEDURE, ART. 38.23 .................................................. 14, 16
TEXAS CODE OF CRIMINAL PROCEDURE, ART. 37.01 ........................................................ 25
TEX. PENAL CODE §30.02(a)(1) ) ......................................................................................... 26
TEXAS RULES OF APPELLATE PROCEDURE 44.2(a) ............................................................ 24

**Other Authorities**

Texas Constitution Article I, Section 9 ......................................................................... 17
United States Constitution Fourth Amendment ............................................................ 17

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully requests oral argument in this case.

**STATEMENT OF THE CASE**

Appellant was indicted in the instant case on September 18, 2013 in a single count Indictment with two enhancement paragraphs charging him with burglary of a habitation with an attempt and intent to commit theft; a second degree felony with an enhanced punishment range of 25 years to 99 years, to life in prison. (C.R., P. 9-10.)[1] Appellant was represented at trial by appointed counsel, Adam Tisdel and by retained counsel, Ronald Spriggs. R.R. Vols. 7, 8, 9. Multiple Motions to Suppress were filed by Appellant's counsel(s) and *pro se* on various dates. (C.R., P. 34-55, 135 and 173.; S.C.R., P. 67, 90, 92.) Hearings on the Motions to Suppress were had on July 9, 2014; January 27, 2015, February 6, 2015 and February 9, 2015.[2] On July 29, 2014 the Court issued a letter ruling on parts of the Motions to Suppress and reserved ruling until the time of trial on the remaining issues for possible suppression contained in the various motions. (C.R., P. 106.; R.R., Vol. 7, P. 16, L. 5-18.) The trial court filed Findings of Fact and Conclusions of Law on September 22, 2014. (S.C.R., P. 101-103.) After waiving his right to a trial by jury with the consent of the State the case was tried to the bench on February 9-11, 2015. (C.R., P. 149.) The trial court found Appellant guilty, found the enhancement paragraphs true and sentenced him to 45 years in the Texas Department of Criminal Justice – Institutional Division. (C.R., P. 198.) This appeal follows. (C.R., P. 203.)

---

[1] Appellant was also indicted on other criminal felony charges and the record contains references to those other felony indictments, however Appellant was ultimately tried only on the case at bar to the bench and the other matters are disposed of or are still pending and not the subject of this appeal. It is noteworthy that while this cause was styled and numbered after an indictment; a complaint was filed prior to indictment and an arrest warrant obtained on that complaint. This will be addressed specifically in Appellant's points of error and statement of fact.

[2] The matter of "pretrial" Motion's to Suppress were taken up at many and various phases of this case.

In the
COURT OF APPEALS
For the
SEVENTH JUDICIAL DISTRICT OF TEXAS
At Amarillo

_____

**No. 24655A**
In the 47th Judicial District Court
Of Randall County, Texas

_____

**DONALD WAYNE LEWIS**
*Appellant*

**v.**

**THE STATE OF TEXAS**
*Appellee*

_____

BRIEF OF THE APPELLANT

TO THE HONORABLE COURT OF APPEALS FOR THE SEVENTH DISTRICT:

COMES NOW DONALD WAYNE LEWIS, Appellant herein in cause number 07-15-00061-CR before the Court of Appeals for the Seventh District, Amarillo, Texas by and through his attorney of record, files this Brief of the Appellant, and in support thereof would respectfully show this Honorable Court the following:

# ISSUES PRESENTED

1.  THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE, i.e. THE ARREST WARRANT BASED ON *FRANKS V. DELEWARE*.

2.  THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE, i.e. THE VEHICLE WAS SEIZED WITHOUT LAWFUL AUTHORITY

3.  THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS THE SEIZURE OF THE VEHICLE AND ITS CONTENTS BECAUSE THE VEHICLE WAS NOT SUBJECT TO THE "PLAIN VIEW" DOCTRINE.

4.  WAS THE EVIDENCE SUFFICIENT FOR CONVICTION IN THIS CASE?

**STATEMENT OF FACTS**

The case for review was born out of an arrest based on an arrest warrant issued by a "MAGISTRATE" IN AND FOR Randall County, Texas on August 26, 2013.[3] (R.R., Vol. 2, Exhibit 4.; R.R., Vol. 2, P. 20, L. 13-24.) The arrest warrant was based on the execution of a Complaint, pre indictment, alleging Lewis had committed an act of burglary against a victim named Gary Pastwa. (R.R., Vol. 2, Exhibit 8.; R.R., Vol. 2, P. 50, L. 12-25 through P. 51, L. 1-5.; R.R. Vol. 2, P. 42, L. 16-24.) After obtaining the arrest warrant or contemporaneously, certainly on the same day, a "blue warrant" was also issued at the behest/suggestion of Sgt. Patrick McBroom with the Randall County Sheriff's Office thus "doubling-down" on the certain and expected apprehension of Lewis. (R.R., Vol. 10, Exhibit 5.; R.R., Vol. 2, P. 20, L. 13-24.; R.R., Vol. 2, P. 70, L. 8-15.)

Sgt. McBroom testified at a suppression hearing he believed he was filing a case against the proper suspect based on a license plate tag given to McBroom from a witness who came home and found a vehicle parked in the area of an alleged burglary.[4] (R.R., Vol. 2, P. 39, L. 1-15.) The "witness" was the homeowner of the site of the alleged burglary who executed a "Field Witness Affidavit" wherein the witness described the suspect as "A very large Black man aprox [sic] 350 lb. [sic] 6'2"? [sic] wearing a tank top." (S.C.R. P. 101; R.R., Vol. 2, Exhibit 6.; R.R., Vol. 2, P. 40, L. 2-18.)[5] Sgt. McBroom ran the license plate obtained

---

[3] While the warrant appears to bear the signature of a magistrate with the first name of "Ronnie" and a last name that is difficult to ascertain, it is unclear based on the lack of further identification which of the title's born by "Ronnie." However, this issue was not addressed by trial counsel for Appellant at the time of admission of the document into evidence.

[4] The filing of the case was the execution of the complaint, at this stage – no indictment or grand jury review formed the basis of the arrest warrant at this point.

[5] Of note the Field Witness Affidavit also contains a reference to the vehicle described swerving to prevent the witness, Pastwa, from seeing the direction of travel. There is also an apparent post script included by Pastwa stating "I was feared for my life when he tried to pin me between his car and building" however the complaint executed based on Pastwa's statement alleges burglary of a habitation not an assault or threat based on the post script.

4

from Pastwa and found the registered owner of the vehicle to be Donald and Anita Lewis. (R.R., Vol. 2, P. 39, L. 9-15.) Noteworthy, Sgt. McBroom testified at the July 9, 2014 pre-trial suppression hearing held in this case that he [McBroom] did not attempt to locate a description of Donald Lewis, or for that matter of Anita Lewis, once he identified the registered owner of the license plate number obtained from Pastwa. (R.R., Vol. 2, P. 40, L. 24-25 through P. 41, L. 1-2.) McBroom swore in the Complaint for the Arrest Warrant issued in this case that "[t]he investigator revealed the owner of the vehicle matched the description of the person the witness saw fleeing the scene of the offense. R.R., Vol. 10, Exhibit 8.

McBroom also stated that prior to the filing of the Complaint, McBroom showed Pastwa a photo array for identification purposes that would allow Pastwa to pick-out the suspect Pastwa believed he saw. (R.R., Vol. 2, P. 52, L. 22-25 through P. 53, L. 1-18.) Pastwa identified a person, not Lewis, and assigned a seventy percent certainty to that choice when shown actual photographs. (R.R. Vol. 2, P. 53, L. 16-18.; R.R. Vol. 2, P. 55, L. 20-22.) McBroom left these facts about the photo identification out of his Complaint, completely. (R.R. Vol. 2, P. 55, L. 23-24.)

After Lewis was arrested McBroom interviewed Lewis at the "jail." (R.R., Vol. 2, P. 57, L. 5-13.) Lewis indicated to McBroom that he [Lewis] had loaned out his vehicle but McBroom did not remember asking Lewis or did not ask Lewis to identify the person to whom Lewis loaned the vehicle. (R.R., Vol. 2, P. 57, L. 5-13.)

At the Suppression hearing held on January 9, 2014, the State chose to admit into evidence documentation regarding attempts to locate Lewis: State's Exhibits 2 and 3 disseminated for law enforcement purposes between and among agencies were crime analysis bulletins naming Lewis as a burglary suspect. (R.R., Vol. 2, Exhibit 2 and Exhibit 3.; R.R.,

5

Vol. 2, P. 17, L. 17-22.)[6]  To further effectuate the apprehension of Lewis, on August 27, 2013, Sgt. McBroom forwarded via email to a representative of Amarillo Police Department an email that described Lewis by race, gender, date of birth.  Also included in the email was a description of the vehicle and an addressed for Lewis that was "listed."  (R.R., Vol. 2, Exhibit 1.; R.R., Vol. 2, P. 17, L. 9-16.)  McBroom further testified at trial that he "put that information out to law enforcement agencies outside of the sheriff's office" after "we had a warrant for the subject."  (R.R., Vol. 7, P. 86, L. 16-23.[7]; RR. Vol. 7, P. 107, L. 15-19.)

On August 28, 2013 at 1422 hours[8] members of the C.O.P.P.S. squad of Amarillo Police Department made contact with Appellant at ████████████████ Amarillo, Potter County, Texas.  (R.R., Vol. 2, P. 21, L. 18-21.; R.R., Vol. 7, P. 79, L. 20-23.)  Lewis had pulled his vehicle into a private drive.  (R.R., Vol. 7, P. 75, L. 8-10.)  Upon contact, Lewis was arrested, based solely on the arrest warrant(s) issued on August 26, 2013.  (R.R., Vol. 2, P. 22, L. 7-15.)  Lewis was driving a 1997 Chevrolet Suburban, red in color.  (R.R., Vol. 2, P. 19, L. 15-25 through P. 20, L. 1.)  Without formal or written inventory, impound or other formalities, Amarillo Police Department officials located at the scene of arrest of Lewis in Potter County seized the Red Chevrolet Suburban.  (R.R., Vol. 2, P. 23, L. 8-10; R.R., Vol. 2, P. 26, L. 16-19.; R.R., Vol. 2, P. 26, L. 16-25 through P. 27, L. 1-4.; R.R., Vol. 7, P. 76, L. 4-11.)  Amarillo Police Department officials refused to release the vehicle to any family member of Lewis and instead informed Lewis that Randall County had requested to "have"

---

[6] State's Exhibit 2 is a Crime Analysis Bulletin dated August 13-19, 2013.  State's Exhibit 3 is a Crime Analysis Bulletin dated August 20-26, 2013.  The date of the Arrest Warrant obtained in this case was August 26, 2013.  State's Exhibit 2 and 3 would have been issued prior to the Arrest Warrant by chronological sequence.  Thereby confirming that McBroom knew the identity of the vehicle prior to the execution of the Field Witness Affidavit of Pastwa.

[7] It is somewhat unclear that "that information" is directly referencing during this [trial on the merits to the bench] portion of the proceedings in R.R., Vol. 7 but the only evidence of information put out to other agencies is the email referenced in the suppression hearing of July 9, 2014 and entered as Exhibit 1 in that proceeding and Exhibit 2 and 3 which were the crime bulletins that were dated prior to the warrant obtained.

[8] 2:22PM

the vehicle. (R.R., Vol. 2, P. 23, L. 11-21.) Amarillo Police Department officials "photographed" and "leaned into" the vehicle while on scene of the arrest of Lewis in Potter County, Texas. (R.R., Vol. 2, P. 25, L. 6-16.) Officer Worley of Amarillo Police Department testified at the July 9, 2014 pretrial suppression hearing that it is the policy of Amarillo Police Department to "document a vehicle" before releasing to another agency. (R.R., Vol. 2, P. 25, L. 17-19.) Officer Worley would not call the seizure of the vehicle in this case or the photographing or "leaning" into the vehicle an impound or a search. (R.R., Vol. 2, P. 26, L.1-4.; R.R., Vol. 2, P. 26, L. 16-19.) Officer Worley testified that the holding of the vehicle on scene and refusal to release the vehicle to a relative or other representative of Lewis was done as a "courtesy for Randall County." (R.R., Vol. 2, P. 28, L. 4-6.)

Once members of the Randall County Sheriff's Office arrived on the scene of the arrest of Lewis on August 28, 2013 the vehicle was turned over to Randall County Sheriff's Office. (R.R., Vol. 2, P. 27, L. 1-4.; R.R., Vol. 2, P. 44, L. 16-21.) Without legal authority the vehicle was taken from Potter County, Texas to Randall County, Texas. (R.R., Vol. 2, P. 58, L. 3-25 through P. 59, L. 1-18.) The vehicle was towed at the direction of the Randall County Sheriff's officials who "took custody" of the vehicle. (R.R., Vol. 7, P. 88, L. 15-23.) The stated purpose for taking the vehicle by Randal County Sheriff's Office officials from Potter County, Texas to Randall County, Texas without court order or other legal authority was [to] "seize it as evidence and to get---to get a warrant." (R.R., Vol. 2, P. 62, L. 7-16.) The vehicle was then taken on August 28, 2013 by Randall County Sheriff's Office employees to a location owned, maintained and operated by the Randall County Sheriff's Department where it remained until August 29, 2013 when a search warrant was executed for the search of the Red Chevrolet Suburban. (*See* R.R., Vol. 2, P. 9, L. 3-12.; R.R., Vol. 2, Exhibit 7.; R.R., Vol. 7, P. 88, L. 20-23.) Upon press by Lewis' counsel at the pretrial suppression

7

hearing, McBroom conceded that he could have obtained a search warrant for the red suburban at the same time he procured the arrest warrant for Lewis, and did not. (R.R., Vol. 2, P. 59, L. 19-24.)

On August 28, 2013 after the vehicle was released to McBroom, Lewis was transported to "Randall County" to be booked into the jail by Officer Worley of Amarillo Police Department. (R.R., Vol. 7, P. 80, L. 16-22.) At the time Lewis was booked-in to the jail, Worley catalogued cash on Lewis' person in the amount of $328.00. (R.R., Vol. 7, P. 81, L. 20-23; R.R., Vol. 10, Exhibit 589.)

After obtaining a search warrant for the Red Chevrolet Suburban, the day after the arrest of Lewis, the vehicle was searched and an inventory returned to the Magistrate who issued the search warrant.[9] (R.R., Vol. 2, Exhibit 7.) Found in the search made on August 29, 2013 were pieces of jewelry, an iPad, and receipts for the exchange of coins for currency which the State attempted to use as evidence to tie Lewis to a robbery of a habitation owned by Ramona Coffman, that being ████████, Amarillo, Texas. (*See generally* R.R., Vol. 7 and 8.) The burglary of ████████, Amarillo, Texas is the subject of the indictment that forms the basis of this case. The alleged burglary occurred sometime after 9:00 AM and sometime before 3:00 PM on August 28, 2013. (R.R., Vol. 7, P. 17, L. 19-25 through P. 18, L. 1-3.)

Ramona Coffman testified that when she arrived at her home after the burglary was discovered by her son that she noticed her iPad, a laptop, change from various rooms, two $50 bills were missing.[10] (R.R., Vol. 8, P. 49, L. 10-16.) Also absent from her home were

---

[9] The inventory or list of evidence was riddled with inaccuracies including a wrong tag number as brought to daylight by trial counsel for Lewis. R.R., Vol. 7, P. 110, L. 19-24.; R.R., Vol. 7, P. 111, L. 2-4.

[10] No evidence of the recovery of these specific denominations in the custody or care of Lewis was presented by the State.

8

pillow cases that had been there earlier.  (R.R., Vol. 8, P. 49, L. 17-24.)  After the day of the alleged burglary [August 28, 2013] Ms. Coffman noticed a camera and a jewelry box were also missing.  (R.R., Vol. 8, P. 50, L. 4-6.)

At trial on the merits the State introduced a Walmart receipt into evidence purported to be found in the console of the Red Suburban on August 29, 2013 after search by search warrant.  (R.R., Vol. 7, P. 95, L. 9-22.; R.R., Vol. 10, Exhibit 467.)  The receipt appears to reference "coin voucher tend" in the amount of one hundred seventy dollars and ninety-nine cents ($170.99).  (R.R., Vol. 10, Exhibit 467.)  The time stamp on the receipt is 1346[11] on the date August 28, 2013; the receipt is not made to a person particular or by name or even by physical description.  (R.R., Vol.7, P. 96, L. 4-8.; R.R., Vol. 10, Exhibit 467.)

Ms. Coffman identified photographs of her niece and nephew and a business card that had been torn, purported to be found in the red suburban.  (R.R., Vol. 10, Exhibit 471 and 472.; R.R., Vol. 8, P. 68, L. 7-24.)

The State went on to admit into evidence photographs of an iPad that was allegedly found in the red suburban.  (R.R., Vol. 10, Exhibit 425; R.R., Vol. 10, Exhibit 523.)  The Apple ID shown in the photograph admitted at trial that was purported to be on the iPad found in the vehicle searched was that of ██████████████████.com.  (R.R., Vol. 7, P. 104, L. 2-6.)  The iPad was released to Ramona Coffman and was not forensically examined or processed for finger prints.  (R.R., Vol. 7, P. 23, L. 7-10.; R.R., Vol. 7, P. 118, L. 14-25 through P. 119, L. 1-14.)  No one other than Ramona Coffman was interviewed regarding the burglary of her residence, that being ██████, Amarillo, Texas.  (R.R., Vol. 7, P. 125, L. 1-3.; R.R., Vol. 7, P. 125, L. 23-24.)

---

[11] 1:46PM

9

## SUMMARY OF ARGUMENT

The trial court erred when it failed to suppress the arrest warrant based on *Franks*, which would have disposed of all evidence derived from the unlawful arrest.

The trial court erred when it failed to suppress evidence, i.e. the seizure of the red suburban, and the subsequent search thereof and the tangible items used as evidence in this case.

There was insufficient evidence to support conviction the indicted offense at bar.

**1.   THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE, i.e. THE ARREST WARRANT.**

 *a.   Background for Review of Arrest Warrant*

Officers are entitled to rely on an arrest warrant if validly obtained by another officer.  However, if the arrest warrant is invalid the resulting arrest is invalid.  *Smith v. State*, 634 S.W. 2d 721 (Tex. Crim. App. 1982).  Therefore, a thorough review of the legality of an arrest warrant which forms the sole basis of an arrest is required; as in this case.  On August 28, 2013 members of the C.O.P.P.S. squad of Amarillo Police Department arrested Lewis based solely on the arrest warrant(s) issued on August 26, 2013.  (R.R., Vol. 2, P. 22, L. 7-15.)

 *b.   Standard of Review*

Appellate courts review a trial court's ruling on a motion to suppress using a bifurcated standard of review; giving almost total deference to the historical facts found by the trial court and analyzing de novo the trial court's application of the law.  *Guzman v. State,* 955 S.W. 2d 85, 89 (Tex. Crim. App. 1997).

Findings of fact were made in a formal document that was titled appropriately.  (S.C.R., P. 101-103.)  The original Clerk's Record also contains a letter ruling that bears substantially the requisites for a finding of fact in this case. (C.R., P. 106-109.)  The standard of review when the trial court makes findings of fact and conclusion of law is laid out in *Keehn v. State,* 279 S.W.3d 330, (Tex. Crim. App. 2009) which states in relevant part:

> "When a trial judge enters findings of fact after denying a motion to suppress, an appellate court [must first] determine[ ] whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings.  If the findings are supported by the record, appellate courts will afford almost total deference to a trial

court's determination of the historical facts when they are based on an evaluation of credibility and demeanor. Appellate courts give the same amount of deference to 'mixed questions of law and fact[ ]' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. But when the resolution of mixed law and fact questions do not depend upon an evaluation of credibility and demeanor, appellate courts are permitted to conduct a de novo review." *Keehn v. State,* 279 S.W.3d 330, 334 (Tex. Crim. App. 2009).

### c. The Arrest Warrant Must be Reviewed in Light of Franks v. Delaware – Misrepresentation, Omissions, False Statements Do Not, in the proper case, Constitute Sufficient Probable Cause

If there is an affirmative misrepresentation in a probable cause affidavit, *in this case a complaint to support an arrest warrant*, and if the misrepresentation is material and necessary to establishing probable cause, the warrant is invalid under the Fourth Amendment. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978); *Blake v. State*, 125 S.W.3d 717, 723–24 (Tex.App.–Houston [1st Dist.] 2003, no pet.). This ruling has been extended to material omissions. *Blake*, 125 S.W.3d at 724. At a *Franks* hearing, the defendant bears the burden by a preponderance of the evidence to establish that a false statement was made—or a true statement was omitted—intentionally, knowingly, or with reckless disregard for the truth. See *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676. If the defendant carries that burden, the false statement is removed from the affidavit, or the true statement is added, and the court must determine whether probable cause for the warrant still exists. *See id*. at 156, 98 S.Ct. at 2676. If it does not, the warrant must be voided and the fruits of the search must be suppressed. *Id*. *Dromgoole v. State*, No. 01-13-00931-CR, 2015 WL 4497978, at *6 (Tex. App. July 23, 2015). If the trial court determined that as a matter of fact the search warrant lacks probable cause and the evidence is that an officer made false, misleading statements or omitted material statements to obtain the warrant the warrant must be voided and the fruits of the warrant must be suppressed, clearly.

12

A *Franks* hearing was conducted on July 9, 2014 in this case. (C.R., Vol. 2) The trial court went on to conduct a discussion with counsel for both parties regarding who has the burden and which party would sponsor the evidence necessary for a consideration. (C.R., Vol. 2, P. 7, L. 1-25 through P. 8, L. 20.; C.R., Vol. 2, P. 10, L. 15-25.) The trial court filed Findings of Fact and Conclusions of Law; this gratefully gives us direction as to the burden, whether or not it was met by the party who bore it and clarity on the facts as the trial court found and applied the law. (S.C.R., P. 101-103).

The trial court and Lewis agree completely, Sgt. McBroom did not recite sufficient probable cause for the issuance of an arrest warrant for Lewis. (S.C.R., P. 101-103.) The trial court made the following factual finding:

> "6.    On August 26, 2013, Sgt. McBroom with the Randall County Sheriff's Office filed a sworn complaint against Donald Wayne Lewis for Burglary of a Habitation. The last statement in the complaint, wherein it is represented that the 'owner of the vehicle matched the description of the person the witness saw fleeing the scene of the offense' misstates the circumstances of the identification provided by the victim and constitutes a reckless misrepresentation of material facts to the magistrate from whom the office sought and obtained a warrant for the arrest of Defendant." (S.C.R., P. 102.)

The trial court went on to make factual findings about a blue warrant that was issued based on the representations of Sgt. McBroom; the blue warrant was based on the arrest warrant.[12] (S.C. R., P. 102.) It is undisputed that Lewis was arrested based on the arrest warrant and the blue warrant issued on the complaint made by Sgt. McBroom. (S.C.R., P. 102.) The reckless misrepresentations were balanced by the court and when the law was applied, the court found that the sworn complaint constituted insufficient probable cause to

---

[12] The trial court's finding of fact in number 8 on page 102 of the Supplemental Clerk's Record would indicate if read on its face that the arrest warrant contained facts or a sworn affidavit or sworn statement. That is not the case; the Complaint (a separate document) formed the basis of the arrest warrant itself.

support the issuance of the arrest warrant or the blue warrant.[13] (S.C.R., P. 103.) Now, what shall we do with this? In this case, if the complaint executed to form the basis of the arrest warrant lacked probable cause and if the resulting "blue warrant" [parole violation warrant] also lacked probable cause; then the warrant should not have been issued. If the arrest warrant should not have been issued then the arrest would not have been effected and the red suburban would not have been gained, "searched" by the arresting officers of Amarillo Police Department and then searched pursuant to a search warrant that was only obtained after the invalid arrest warrant was served on Lewis. This is a typical slippery slope of which we all learned during our formative years of our legal studies. The trial court clearly misapplied the law when his conclusions summarily disregarded *Franks*. *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676. The invalidity of the arrest warrant was where the analysis should have ceased. The trial court should have suppressed the arrest and all resulting evidence obtained legally or illegally based on the illegal arrest. Lewis would re-urge his opening frame to this argument: "***Officers are entitled to rely on an arrest warrant if validly obtained by another officer. However, if the arrest warrant is invalid the resulting arrest is invalid***. {emphasis added} *Smith v. State*, 634 S.W. 2d 721 (Tex. Crim. App. 1982)." The *Franks* issue is separate and apart from any other legal analysis regarding other legal issues raised in this case. As concluded by the trial court in this case the complaint that formed the basis of the arrest warrant was improper; that being more than a mere mistake. The findings of fact and conclusion of law filed in this case appear to disregard the facts and the law relative to *Franks*, relying on *Martinez v. State*, 17 S.W.3d 677 (Tex. Crim. App. 2000) habeas granted

---

[13] The Findings of Fact and Conclusion of Law states on page 103: "Conclusions of Law. 1. When considered in the light of the above-referenced misstatement regarding the identification of the alleged perpetrator by the victim, the sown complaint provides insufficient probable cause to support the issuance of the arrest warrant for the person of Defendant."

14

by S.D. Texas February 7, 2006.[14]  The defendant Martinez was convicted of three counts of capital murder and was sentenced to death.  Martinez's abode was searched based on the consent of his mother.  Martinez challenged the consent as involuntary and claimed that this mother lacked authority to consent to the search of Martinez's room.  *Id.* at 682-683.  The Court of Criminal Appeals found no fault with the search of Martinez's room, however the second search of which Martinez complained was that of his vehicle.  Martinez argued that the search warrant was invalid under *Franks*.  *Id.* at 684.  At the suppression hearing the State defended the search warrant and argued an alternative theory of law for the seizure of one particular item, that theory being the "plain view" seizure doctrine.  The holding in Martinez is applicable to the divergence or lack thereof between Texas Code of Criminal Procedure Article 18.10 and CCP Article 38.23.  This issue is also present in the case at bar and addressed herein as Issue 3, *infra*.  *Martinez* holding does not address the *Franks* issue as it relates to blatant lies, misrepresentations, and material omissions.  *Martinez* may be relevant to discussion of other issues in the case at bar it but it is not relevant to the disposition of the invalidity of the arrest warrant based on material falsehoods, misrepresentations, and omissions; *Martinez* cannot be read so broadly as to cover all the facts of the instant case.

There is no need to consider further argument (*Martinez* or "plain view" or subsequent remedial measures of a post-script search warrant for the red suburban) or legal theories - *when the arrest warrant fails it all fails*.

### d. If The Arrest Warrant Was Invalid The Post Script Search Warrant Is Also Invalid

---

[14] The Findings of Fact and Conclusion of Law on page 103 states: "5. To the extent, if any, the actions of Sgt. McBroom and Randall County in transferring the lawfully seized vehicle in question from Potter County to Randall County violated either Articles 18.10 or 14.03 of the Texas Code of Criminal Procedure such violations do not require exclusion of either the vehicle or articles subsequently discovered in the vehicle under Article 38.23 of the Texas Code of Criminal Procedure.  *Martinez v. State,* 17 S.W.3d 677 (Tex. Crim. App. 2000)."

15

The search warrant smells because it is, in part based on the same offensive misrepresentations, omissions and lies. (*See* R.R., Vol. 2, P. 9, L. 3-12.; R.R., Vol. 2, Exhibit 7.; R.R., Vol. 7, P. 88, L. 20-23.) Therefore, the attempt to rectify the bad seizure of the vehicle is not available for the State to rely upon to remedy the terminal origins of this case. "***Officers are entitled to rely on an arrest warrant if validly obtained by another officer. However, if the arrest warrant is invalid the resulting arrest is invalid***. {emphasis added} *Smith v. State*, 634 S.W. 2d 721 (Tex. Crim. App. 1982)."

**2.     THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE, i.e. THE VEHICLE WAS SEIZED WITHOUT LAWFUL AUTHORITY.**

 *a.     Standard of Review*

The standard of review when reviewing a trial court's ruling on a motion to suppress is a bifurcated standard recited in *Guzman v. State,* 955 S.W.2d 85,89 (Tex. Crim. App. 1997). *See also State v. Kelly,* 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006).

Findings of fact were made in a formal document that was titled appropriately. (S.C.R., P. 101-103.) The original Clerk's Record also contains a letter ruling that bears substantially the requisites for a finding of fact in this case. (C.R., P. 106-109.) The standard of review when the trial court makes findings of fact and conclusion of law is laid out in *Keehn v. State,* 279 S.W.3d 330, (Tex. Crim. App. 2009) which states in relevant part:

> "When a trial judge enters findings of fact after denying a motion to suppress, an appellate court [must first] determine[ ] whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings. If the findings are supported by the record, appellate courts will afford almost total deference to a trial court's determination of the historical facts when they are based on an evaluation of credibility and demeanor. Appellate courts give the same amount of deference to 'mixed questions of law and fact[ ]' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. But when the resolution of mixed law and fact questions do not depend upon an evaluation of credibility and demeanor,

16

appellate courts are permitted to conduct a de novo review." *Keehn v. State,* 279 S.W.3d 330, 334 (Tex. Crim. App. 2009)

While Lewis believes that his *Franks* briefed *supra* makes further analysis unnecessary, there are other points of error or legal issues that do not sustain conviction in this case.

*b. Martinez v. State, Authority Cited by the Court, Does not Apply to the Facts of This Case*

Texas Code of Criminal Procedure 18.10 provides for warrant procedures and states that "property may not be removed from the county in which it was seized without an order approving the removal." TEXAS CODE OF CRIMINAL PROCEDURE, Article 18.10 (Vernon 2014). The Court of Criminal Appeals has been presented with what Counsel for Lewis will title a "jurisdictional" issue in *Martinez v. State*, 17 S.W.2d 677 (Tex. Crim. App. 2000). In that case the Appellant, Martinez, complained that the officers dealing with evidence in his case violated CCP Art. 18.10 by removing property from Val Verde County to Brazoria County without prior approval from a Val Verde County magistrate. Martinez further complained that this violation of 18.10 triggered CCP Art. 38.23 which would provide for the exclusion of the State's "illegally" obtained evidence. The State in *Martinez* argued what I liken to a subsequent remedial measure which cured any defect, of course the State conceded no error. *Id.* at 687. However, the *Martinez* court determined that any error was cured retroactively by the subsequent remedial measures and was harmless. The facts of *Martinez* are not the same in this case. Lewis' vehicle was not initially seized under any lawful authority, CCP Art. 18.10 (warrant) or otherwise. The removal of the vehicle from Potter County to Randall County is offensive, unlawful and demands the suppression of any evidence obtained based on the following:

17

*c.*     ***The Fourth Amendment of the United States Constitution and The Texas
Constitution Article I, Section 9 Were Violated in this Case***

Appellant in the instant case complains of not only of a violation of his federal
protection granted by the Fourth Amendment to the United States' Constitution but also
a grander proposition granted by State protection afforded by Article I, Section 9 of the
Texas Constitution. When addressing the Federal issue it is interesting to note the
narrow focus of protection such as in *Colorado v. Bertine.* 479 U.S. at 374. Bertine was
arrested for driving while under the influence of alcohol. After Bertine was taken into
custody and prior to the time his van was towed to an impoundment lot, an officer
inventoried the contents of the van in accordance with local police procedures. The
Supreme Court of Colorado held the search to be unreasonable under the Fourth
Amendment, in part, because Bertine himself was not offered the opportunity to make
other arrangements for the safekeeping of the property. The Supreme Court of the United
States reversed. The Court held that "the reasonableness of any particular governmental
activity does not necessarily or invariably turn on the existence of alternative 'less
intrusive' means." *Bertine,* 479 U.S. at 374, 107 S.Ct. at 742 (quoting *Illinois* v. *Lafayette,*
462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983)). *Bertine* is not binding
on this Court on a State constitutional issue; it is only permissive authority. *Heitman* v.
*State,* 815 S.W.2d 681, 690 n. 22 (Tex.Crim.App.1991). In *Heitman,* an inventory search
case, the Court of Criminal Appeals expressly held that the Texas courts, when analyzing
and interpreting Article I, Section 9 of the Texas Constitution, will not be bound by
United States Supreme Court cases addressing comparable fourth amendment issues. *Id.* at
690. The Court recognized that although state constitutions cannot subtract from the rights
guaranteed by the United States Constitution, they can provide additional rights to their

18

citizens. *Id.* Texas courts have consistently held that impoundment is lawful only when no other reasonable alternative is available to insure the protection of the vehicle. In cases where impoundment follows custodial arrest, the courts have considered several factors in determining the reasonableness of the impoundment:

(1) Whether someone was available at the scene of the arrest to whom the police could have given possession of the vehicle, *Delgado* v. *State,* 718 S.W.2d 718 (Tex.Crim.App.1986); *Daniels v. State,* 600 S.W.2d 813 at 815 (Tex. Crim. App. 1980);

(2) Whether the vehicle was impeding the flow of traffic or was a danger to public safety, *Benavides* v. *State,* 600 S.W.2d 809 (Tex. Crim. App. 1980); *Smith* v. *State,* 759 S.W.2d 163, 167 (Tex. App.-Houston [14th Dist.] 1988, pet. ref d);

(3) Whether the vehicle was locked, *Benavides,* 600 S.W.2d at 812;

(4) Whether the detention of the arrestee would likely be of such duration as to require the police to take protective measures, *Fenton* v. *State,* 785 S.W.2d 443, 445 (Tex. App. - Austin 1990, no pet.);

(5) Whether there was some reasonable connection between the arrest and the vehicle, *Benavides,* 600 S.W.2d at 812; and,

(6) Whether the vehicle was used in the commission of another crime. *Gauldin v. State,* 683 S.W.2d 4 1 1 ( Tex. Crim. App. 1984); *Gords* v. *State,* 824 S.W.2d 785, 787-88 (Tex. App. 1992).

"Once a motor vehicle operator has been put under arrest and taken into custody, it is proper to impound the vehicle and conduct an inventory when impoundment is the only reasonable alternative available to protect the vehicle." *Evers* v. *State,* 516 S.W2d 46,

19

50 (Tex. Crim. App. 1978)." *Perry* v. *State,* 933 S.W.2d 249, 252 (Tex. App. 1996). "An inventory search is permissible under both the federal fourth amendment and Article 1, Section 9 of the state constitution if conducted pursuant to a lawful impoundment. *South Dakota* v.*Opperman,* 428 U.S. 364, 375-76, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976); *Benavides* v. *State,* 600 S.W.2d 809, 810 (Tex. Crim. App. 1980)." *Gords* v. *State,* 824 S.W.2d 785, 787 (Tex. App. 1992).

"An inventory search is a judicially created, well-defined exception to the warrant requirement of the fourth amendment. *Illinois* v. *Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). For a warrantless inventory search to be valid, (1) the original impoundment of the vehicle must be lawful *(South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)); (2) the purposeof the inventory search must be to protect the owner's property and to protect the police from claims of lost, stolen, or vandalized property, and to guard the police from danger *(Id.* at 368-70, 96 S.Ct. at 3097); (3) the inventory search must be conducted in good faith pursuant to reasonable standardized police procedures and not as a pretext for an investigatory search *(Colorado v. Bertine, 419* U.S. 367, 373-74, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987)); or as a ruse for a general rummaging in order to discover incriminating evidence *(Florida v. Wells,* 495 U.S. 1, 3–5, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990))." *Perry* v. *State,* 933 S.W.2d 249, 251(Tex. App. 1996). The State has the burden of proof. *Delgado* v. *State,* 718 S.W.2d 718, 721 (Tex.Crim.App.1986). *Gords* v. *State,* 824 S.W.2d 785, 787 (Tex. App. 1992). Requiring that inventories be conducted according to criteria or routine strikes a balance between the State's legitimate interests and the legitimate privacy expectations of the owner. *United States v. Salmon,* 944 F.2d 1106,1120 (3d Cir.1991). Standardized criteria or established routine must limit police discretion as to, first, whether to search the vehicle

20

and, second, the scope of an inventory. *Id.* (citing *Bertine, 419* U.S. at 375–76, 374 & n. 6; *United States* v. *Frank,* 864 F.2d 992, 1002-03, 1003 (3d Cir. 1988); *United States v. Bush, 641* F.2d 357, 370-71 (3d Cir.1981)).

The Amarillo Police department made contact with Lewis and immediately arrested him solely on the knowledge that he had an arrest warrant out of Randall County, Texas and presumably they knew he also had a parole violation warrant based on the arrest warrant issued by Randall County, Texas. The members of the Amarillo Police Department searched the vehicle by leaning in the vehicle, taking pictures of the vehicles and then milling about while waiting for members of a neighboring jurisdiction to show up and take the vehicle. While there were alternatives to seizure and search on scene available for the disposition of the vehicle in this case, the C.O.P.P.S. Unit of Amarillo Police had no intention of employing any option other than impound of the vehicle. Amarillo Police department had been asked via email by Sgt. Patrick McBroom "If he [Lewis] is arrested, I need the suburban as evidence. I will come and take possession of the vehicle." (R.R., Vol. 2, Exhibit 1.) Sgt. Patrick McBroom did not obtain a search warrant at the same time he obtained the arrest warrant which formed the basis of the arrest, although he admitted in cross examination he could have obtained a search warrant contemporaneously with the arrest warrant. (R.R., Vol. 2, P. 59, L. 19-24.) Most troublesome is the complete lack of regard for police procedure and policy that is necessary to protect citizen rights; the vehicle was in a private drive, not impeding traffic, in Potter County, Texas and was simply held there with doors open as members of the Amarillo Police Department photographed the interior and "leaned" into the vehicle waiting on a member of law enforcement from a neighboring county to arrive and take the vehicle. The State provided no impound or transfer of property form as evidence of the authority for Amarillo Police Department to simply hand over a piece of property they

21

were intent on seizing upon the arrest of Lewis. The State provided no legal authority for the lack adherence to proper impound policy between and among the law enforcement agencies involved. While Sgt. McBroom may well have suspected the vehicle was evidence of some criminal activity afoot; his hunch alone is not sufficient legal authority for McBroom to merely arrive in a county, not his own, at a traffic stop, not his own, and flight away with a vehicle without any paperwork in tow. While the burglary of complaining witness Pastwa may have had some tie to the red suburban at issue, but for the illegal seizure, lack of impound but friendly unlawful transfer of evidence between agencies; the evidence introduced in the case at bar would not have been known or discovered; therefore the poison is failing to follow proper police procedure and the consequence for ingesting the poison is the exclusion of admission of all evidence inside the red suburban.[15] Any subsequent remedial measure taken by McBroom by obtaining a search warrant a day after the vehicle was already unlawfully locked away on Randall County's property are of no effect and do nothing to remove the terminal effect of the poisonous taint of the original unlawful acts. For this to stand as permissible is to turn on its head the order and procedural safeguards well established in this state for the seizure, retention, impound and inventory of possible evidence.

3. **THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS THE SEIZURE OF THE VEHICLE AND ITS CONTENTS BECAUSE THE VEHICLE WAS NOT SUBJECT TO THE "PLAIN VIEW" DOCTRINE.**

a. *Standard of Review*

The standard of review when reviewing a trial court's ruling on a motion to suppress

---

[15] Of great importance is the fact that McBroom knew he wanted to find this red suburban two weeks prior to the execution of the complaint for arrest warrant as evidenced by the crime bulletins issued one full consecutive week prior to the date of the arrest warrant and the week of the issuance of the warrant. Further, McBroom admitted in live testimony that he could have obtained a search warrant for the red suburban at the same time he obtained the arrest warrant but did not. These facts taken *in toto* with the remaining abnormalities of the procedures employed make the lack of regard for policy and police procedure offensive.

is a bifurcated standard recited in *Guzman v. State,* 955 S.W.2d 85,89 (Tex. Crim. App. 1997). *See also State v. Kelly,* 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006).

Findings of fact were made in a formal document that was titled appropriately. (S.C.R., P. 101-103.) The original Clerk's Record also contains a letter ruling that bears substantially the requisites for a finding of fact in this case. (C.R., P. 106-109.) The standard of review when the trial court makes findings of fact and conclusion of law is laid out in *Keehn v. State,* 279 S.W.3d 330, (Tex. Crim. App. 2009) which states in relevant part:

> "When a trial judge enters findings of fact after denying a motion to suppress, an appellate court [must first] determine[ ] whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings. If the findings are supported by the record, appellate courts will afford almost total deference to a trial court's determination of the historical facts when they are based on an evaluation of credibility and demeanor. Appellate courts give the same amount of deference to 'mixed questions of law and fact[ ]' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. But when the resolution of mixed law and fact questions do not depend upon an evaluation of credibility and demeanor, appellate courts are permitted to conduct a de novo review." *Keehn v. State,* 279 S.W.3d 330, 334 (Tex. Crim. App. 2009)

> **b.      Plain View Doctrine Does Not Apply to the Facts in this Case as a Remedy for an Invalid Arrest Warrant.**

A seizure of an object is lawful under the plain view exception if three requirements are met. First, law enforcement officials must lawfully be where the object can be "plainly viewed." Second, the "incriminating character" of the object in plain view must be "immediately apparent" to the officials. And third, the officials must have the right to access the object. *Horton* v. *California,* 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

Plain view, in the absence of exigent circumstances, can never justify a search and seizure without a warrant when law enforcement officials have no lawful right to access an object. *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct.2022, 29 L.Ed.2d

23

564 (1971) *(plurality opinion).*

"Texas law does not recognize the inevitable-discovery doctrine, which would permit admission of evidence obtained in an unlawful search if such evidence would later have been obtained lawfully. In *Daugherty,* the Court of Criminal Appeals confirmed that, if evidence was obtained illegally under Article 38.23(a) of the Code of Criminal procedure, it must be excluded. *Daugherty v. State,* 931 S.W.2d 268 at 269 (Tex. Crim. App. 1996). No exception exists for evidence that later might have been obtained lawfully. *Id.* Thus, unless evidence is obtainedlegally with a search warrant or through one of the carefully-crafted exceptions to the warrant requirement, the evidence must be excluded.[16]

A finding of exigent circumstances usually includes "factors pointing to some danger to the officer or victims, an increased likelihood of apprehending a suspect, or the possible destruction of evidence." *McNairy,* 835 S.W.2d at 107. Thus, situations justifying a warrantless search include: (1) rendering aid or assistance to persons whom the officers reasonably believe are in need of assistance; (2) preventing the destruction of evidence or contraband; and, (3) protecting the officers from a person whom they reasonably believe to be armed and dangerous. *Id.* (citing *Stewart v. State,* 681 S.W.2d 774 Tex. App.-Houston [14th Dist.] 1984, pet. ref'd)). To prove exigent circumstances existed, the State must show "that the police could have reasonably concluded that evidence would be destroyed or removed before they could obtain a search warrant." *Id.* The seizing officer must have probable cause to associate the item seized with criminal

---

[16] Of note is a case that distinguishes certain facts under a federal theory interpretation known as the independent source doctrine. *Wehrenberg v. State*, 416 S.W.3d 458; (Tex. Crim. App. 2013). The case at bar is not consistent or analogous with the holding in *Wehrenberg*, because the search warrant was improper. The search warrant in this case was based on the same information obtained for the arrest warrant was based on wholly defective information.

activity. *Martinez v. State,* 17 S.W.3d 677, 685 (Tex. Crim. App.2000).

If it is determined that law enforcement committed constitutional error, the appellate court must then determine whether the error was harmless beyond a reasonable doubt. (Tex. R.A.P. 44.2(a).) To decide harmless error, the court must consider (1) the source of the error; (2) the nature of the error; (3) whether or to what extent the State emphasized the error; (4) the error's probable implications;; (5) how much weight a juror [fact finder] would probably place on the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Ramirez v. State*, 105 S.W.3d 730, 743-46 (Tex. App. 2003). *See Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989).

The officers of the C.O.P.P.S. unit that made initial contact with Lewis did so in a private drive; not a public roadway. The basis for the stop was illegal arrest warrants, solely. While McBroom had emailed the Amarillo Police Department on the day before police came into contact with Lewis; two crime bulletins were issued two weeks earlier and it was known to all the license number of a vehicle that may have been driven by Lewis. McBroom stated in his email that he wanted the vehicle so Amarillo Police Department officers knew, presumably, that there was a need to hang on to the vehicle. Without conceding any legitimacy of the process or procedures prior to the stop of Lewis or during the contact with Lewis or the subsequent removal and searches of the vehicle, the plain view doctrine still requires the *collection* of the evidence. The use of a possible "eraser" legal theory – no matter what the red suburban was in plain view so the State gets to have it – does not relieve the State actors of the necessity of compliance with the collection of evidence under what they believe is a

25

valid theory. The harm is apparent; the contents of the red suburban were unknown and not in plain view – without the unlawful seizure of the red suburban the contents were not in view. Further, the Amarillo Police Department and the Randall County Sheriff's Department did not collect the red suburban in compliance with any known or conceivable evidence collection method. Again, they merely said we want it; hauled it off without formalities and established procedure for retrieval of evidence and then retroactively claim its "plain view evidence" so "it's okay." IF (without conceding any points necessary to concede the validity of the plain view doctrine) the plain view doctrine applied then the red suburban should have been "collected" and processed as evidence not merely "towed and stowed" by McBroom. Further, if the red suburban was evidence in plain view, why did McBroom obtain a search warrant, post script?

4. **THE EVIDENCE WAS INSUFFICIENT FOR CONVICTION IN THIS CASE.**

*a.    Standard of Review*

A challenge to the legal sufficiency of the evidence need not be preserved at trial, and may be raised for the first time on appeal. *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001).[17] In reviewing a legal sufficiency or "no evidence" claim, the appellate court will

---

[17] A motion for directed verdict is inappropriate in a bench trial. *State v. Lewallen*, 927 S.W. 2d 737, 739 (Tex.App.—Fort Worth 1996, no pet.). This is because a "verdict" is defined by statute as "a written declaration by a jury of its decision of the issue submitted to it in the case." TEX. CODE CRIM. PROC. ANN. art. 37.01 (Vernon Supp. 1996) "Verdict" by definition does not apply to a trial court's decision, although the word is used loosely in the statutes and case law. *State v. Davenport, 866 S.W.2d 767, 769 n.2* (Tex. App.--San Antonio 1993, no pet.). A "directed verdict" is commonly defined as the action taken by a trial judge in a jury trial to decide the issues in the case without allowing them to be submitted to the jury because, as a matter of law, the party with the burden of proof has failed to make a prima facie case for jury consideration. See *Nassar v. Hughes, 882 S.W.2d 36, 38* (Tex. App.--Houston [1st Dist.] 1994, writ denied); *Homme v. Varing, 852 S.W.2d 74, 76-77* (Tex. App.--Beaumont 1993, no writ); 4 McDONALD, TEXAS CIVIL PRACTICE § 21:48 (1992); BLACK'S LAW DICTIONARY 413 (5th ed. 1979). This definition presumes a trial by jury. Thus, there logically can be no "directed verdict" in a case where a trial judge serves as the fact finder. In other words, when there is no jury, there is no "verdict" for the trial judge to "direct."

review the evidence in the light most favorable to the verdict, and will determine whether the trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Conner v. State,* 67 S.W.3d 192, 197 (Tex. Crim. App. 2001) *(citing Jackson v. Virginia,* 433 U.S. 307, 319 (1979)). The appellate court will consider all evidence admitted, whether proper or improper. "Every fact need not point directly and independently to the defendant's guilt [citation omitted]. A conclusion of guilt can rest on the combined and cumulative force of all incriminating circumstances." *Id.* The trier of fact is free to believe or disbelieve the testimony of any witness. *Flanagan v. State*, 675 S.W.2d 734, 746 (Tex. Crim. App. 1984) (op. on reh'g).

### b. There is No Evidence Lewis Was in the Habitation; There Was No Time to Accomplish All Elements Necessary for Conviction; The Evidence Admitted at Trial is Inconsistent With What the State Relies Upon as Evidence of the Alleged Crime

An individual is guilty of burglary of a habitation if, without the effective consent of the owner, the person: enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault.[18] TEX. PENAL CODE §30.02(a)(1)).

The indictment charged Lewis with entering a habitation intentionally and knowingly without the consent of Ramona Coffman, the owner, and while in the habitation committing to or completing the act of theft.

Thus, to prove that Lewis committed burglary of a habitation, the State must prove that Lewis entered the habitation. The State's evidence failed to establish that Lewis was in the habitation owned by Ramona Coffman.

---

[18] As it relates to the present case, theft is defined as follows: "A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. Appropriation of property is unlawful if it is without the owner's effective consent." TEX. PENAL CODE §31.03(a), (b)(1).

27

The State's evidence consisted of evidence that should have been suppressed as argued herein, but for argument sake if the evidence propounded by the State was admissible; it does not provide proof beyond a reasonable doubt that Lewis was in the home of Coffman at any point. No witness testified regarding suspicious activity, unusual vehicles; no fingerprints were found on scene, no neighbors were interviewed. [19] (R.R., Vol. 7, P. 125, L. 1-3.; R.R., Vol. 7, P. 125, L. 23-24.) Ramona Coffman identified an iPad purported to have been found in the red suburban driven by Lewis at the time of his arrest. However, no fingerprints were obtained from the iPad; no digital inspection of the contents of the iPad was conducted to determine if anyone had used the iPad or attempted to place on the devise personal data which would link the burglar to the item.[20] Second, a receipt for coins changed for currency in the amount of $170.99 was admitted at trial. An attempt by the State was made to tie the $170.99 to Lewis. Lewis was booked into the Randall County Jail with $328.00; a shockingly round number compared to the uneven number of 170.99. The time on the ticket from Walmart was 1:46PM; the traffic stop that resulted in the arrest of Lewis began at 2:22PM. The burglary was alleged to have happened sometime after 9:00AM on August 28, 2013. Somehow Lewis is supposed to have gone into a house on ███ Street in Amarillo, go to an unidentified Walmart in Amarillo (of which there are many) and in the mere 4 to 5 hours possible have ditched a camera, laptop, pillowcases and other items not recovered in the red suburban. The mere presence of what appears to be stolen property or property acquired without permission does not a burglar make. Instead perhaps (while I am unwilling to concede this point) the

---

[19] *Benitez v. State,* not reported in S.W.3d 2010 WL 4909954, (Tex. App. – Austin 2010) (neighbor witnessed suspicious activity which was found with other factors to be sufficient evidence to tie defendant with burglary)). *Johnson v. State*, not reported in S.W.3d 2010 WL 4813706 (Tex. App. – Texarkana 2010) (fingerprints found inside the residence was sufficient evidence to convict defendant of burglary of a habitation)).
[20] *See* R.R., Vol. 8, P. 64, L. 13-24.; RR. Vol. 7, P. 20, L. 14-22.; R.R., Vol. 7, P. 23, L. 7-10.; R.R., Vol. 7, P. 25, L. 13-22.;

28

evidence is sufficient for a misdemeanor theft, i.e. possession of "stolen" property; but no evidence sufficient to support a burglary can be found.

## CONCLUSION

The arrest of Lewis was unlawful; thereby making the events of law enforcement subsequent unlawful. The arrest of Lewis should have been suppressed because of the *Franks* violations. The seizure of the vehicle should have been suppressed for lack of compliance with proper police procedure and lack of acceptable substitute legal authority. The red suburban is not subject to a "plain view" exception for seizure and the subsequent remedial measure of a search warrant after the arrest is not a remedy for the poison. The evidence is legally insufficient to support a finding of guilt. The case should be reversed and rendered.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays this Honorable Court reverse the conviction and render a judgment of acquittal in this case.

Respectfully Submitted,

*/s/* TINA DAVIS RINCONES
**TINA DAVIS RINCONES**
Attorney at Law 109
E 6th Street
Plainview, Texas 79072 Telephone
(806) 429-0706
Facsimile (806) 553-4424
SBN 24030776
Email: trincones@redraiderlaw .com
ATTORNEY FOR APPELLANT

29

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the Brief of the Appellee has been emailed to the parties listed below on this 4th day of September, 2015.

James A. Farren/Kristy Wright
Randall County District Attorney
2309 Russell Long Blvd, Suite 120
Canyon, Texas 79105
Tel: (806) 468-5570
Fax: (806) 468-5566

/s/ TINA DAVIS RINCONES
**TINA DAVIS RINCONES**

## CERTIFICATE OF WORD COUNT

I certify that this document contains 10,933 words and is incompliance with the

Texas Rules of Appellate Procedure.

/s/ TINA DAVIS RINCONES
**TINA DAVIS RINCONES**